**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311<br>Hon. Marianne O. Battani |
| IN RE: AUTOMOTIVE STEEL TUBES | |
| THIS RELATES TO:<br><br>END-PAYOR ACTION | Case No. 2:16-cv-04003<br><br>Oral Argument Requested |

**CURTIS-MARUYASU AMERICA, INC.'S
MOTION TO DISMISS END-PAYORS' SECOND
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Curtis-Maruyasu America, Inc. ("CMA"), through counsel, moves this Court for an Order pursuant to Rules 12(b)(1), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure dismissing with prejudice End-Payors' Second Consolidated Amended Class Action Complaint (the "Complaint") for improper venue, for failure to state a claim upon which relief can be granted, and for lack of constitutional and antitrust standing. The End-Payors' state law claims should also be dismissed.

As explained in the accompanying Memorandum of Law in Support of this Motion to Dismiss, End-Payor Plaintiffs ("EPPs") allege no facts to plausibly suggest that CMA individually participated in the conspiracy as alleged, that EPPs are entitled to relief, or that

EPPs, who are indirect purchasers of steel tubes, have standing to bring a claim.  Additionally, EPPs have failed to establish that venue is proper under Section 12 of the Clayton Act as to CMA, which is an inhabitant of, and transacts business in, Kentucky.

Pursuant to Local Rule 7.1(a), counsel for CMA conferred with counsel for EPPs on February 1, 2018 and explained the nature of this Motion and the relief sought.  EPPs' counsel did not consent to the dismissal of the Complaint.

WHEREFORE, CMA respectfully requests that the Court issue an order GRANTING this Motion to Dismiss with prejudice.

Respectfully submitted,

**WHITE & CASE**LLP

Dated:    February 2, 2018

By:  */s/ Christopher M. Curran*
     Christopher M. Curran

Christopher M. Curran
Email: ccurran@whitecase.com
Eileen M. Cole
Email: ecole@whitecase.com
Samuel J. Sharp
Email: samuel.sharp@whitecase.com
**WHITE & CASE**LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel for Curtis-Maruyasu America, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Hon. Marianne O. Battani |
| IN RE: AUTOMOTIVE STEEL TUBES | |
| THIS RELATES TO: END-PAYOR ACTION | Case No. 2:16-cv-04003 |

**MEMORANDUM OF LAW IN SUPPORT OF
CURTIS-MARUYASU AMERICA, INC.'S MOTION TO DISMISS END-
PAYORS' SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

(1)     Whether EPPs' claims against CMA must be dismissed because EPPs failed to state a plausible claim for relief under the pleading standard set by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

(2)     Whether EPPs' claims against CMA must be dismissed because EPPs have not satisfied the venue requirements of Section 12 of the Clayton Act.

(3)     Whether EPPs' claims must be dismissed for lack of constitutional standing for the reasons set forth in the Defendants' Collective Motions to Dismiss submitted in the automotive parts cases in this MDL, which CMA joins and incorporates by reference.

(4)     Whether EPPs' claims must be dismissed for lack of antitrust standing for the reasons set forth in the Defendants' Collective Motions to Dismiss submitted in the automotive parts cases in this MDL, which CMA joins and incorporates by reference.

(5)     Whether EPPs' state antitrust, consumer protection, and unjust enrichment claims must be dismissed for the reasons set forth by other Defendants in this MDL, whose arguments CMA joins and incorporates by reference.

## CONTROLLING AND MOST APPROPRIATE
## <u>AUTHORITY FOR THE RELIEF SOUGHT</u>

<u>FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED</u>

Fed. R. Civ. P. 12(b)(6)

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012)

<u>IMPROPER VENUE</u>

15 U.S.C. § 22

Fed. R. Civ. P. 12(b)(3)

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718 (7th Cir. 2013)

<u>LACK OF CONSTITUTIONAL STANDING</u>

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

<u>LACK OF ANTITRUST STANDING</u>

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983)

## **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................... 1

II.     STATEMENT OF FACTS ................................................................................ 2

III.    ARGUMENT ..................................................................................................... 3

      A.      EPPs Fail to Present Factual Allegations Plausibly Stating a Claim that CMA Engaged in a Price-Fixing Conspiracy ........................................................... 3

      B.      EPPs Do Not Establish That Venue Is Proper in This District .................... 7

      C.      EPPs Lack Constitutional Standing to Assert Claims Against CMA ......... 11

      D.      EPPs Lack Antitrust Standing to Assert Claims Against CMA ................. 12

      E.      EPPs' State Law Claims Should Be Dismissed ......................................... 14

IV.     CONCLUSION ............................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Armco Steel Co. v. CSX Corp.*,
  790 F. Supp. 311 (D.D.C. 1991) ...........................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................3

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983) .............................................................................................13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................3, 6

*Carrier Corp. v. Outokumpu Oyj*,
  673 F.3d 430 (6th Cir. 2012) .................................................................................3

*Daniel v. Am. Bd. of Emergency Med.*,
  428 F.3d 408 (2d Cir. 2005) ...............................................................................8, 9

*Eastman Outdoors Inc. v. Archery Trade Ass'n*,
  No. 05-74015, 2006 U.S. Dist. LEXIS 42835 (E.D. Mich. June 6, 2006) .............10

*First Am. Title Co. v. DeVaugh*,
  480 F.3d 438 (6th Cir. 2007) .................................................................................3

*Go-Video, Inc. v. Akai Elec. Co.*,
  885 F.2d 1406 (9th Cir. 1989) ...............................................................................8

*Gowen v. Benchmark Senior Living, LLC*,
  2017 Mass. Super. LEXIS 92 (Suffolk Cty. Super. Ct. May 5, 2017) ...................16

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
  199 F.3d 1343 (D.C. Cir. 2000) .............................................................................8

*In re Aggrenox Antitrust Litig.*,
  94 F. Supp. 3d 224 (D. Conn. 2015) ....................................................................17

*In re Automotive Refinishing Paint Antitrust Litig.*,
  358 F.3d 288 (3d Cir. 2004) ..................................................................................8

*In re Automotive Parts Antitrust Litig.*,
  29 F. Supp. 3d 982, 1021 (E.D. Mich. 2014) ............................................15, 16, 17

*In re Automotive Parts Antitrust Litig.*,
  50 F. Supp. 3d 836, 859 (E.D. Mich. 2014) .........................................................14

*In re Automotive Parts Antitrust Litig.*,
  Nos. 12-md-02311; 2:12-cv-00102; 2:12-cv-00103, 2013 U.S. Dist. LEXIS 80338 (E.D.
  Mich. June 6, 2013) ...................................................................................................17

*In re Blue Cross Blue Shield Antitrust Litig.*,
  225 F. Supp. 3d 1269, 1291 (N.D. Ala. 2016) .................................................................8, 9

*In re Broiler Chicken Antitrust Litig.*,
  No. 16 C 8637, 2017 U.S. Dist. LEXIS 191754 (N.D. Ill. Nov. 20, 2017) ......................15, 17

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*,
  No. 1:14-md-2508, 2015 U.S. Dist. LEXIS 121620 (E.D. Tenn. June 24, 2015) ..................17

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007)..................................................................................................6

*In re GM LLC Ignition Switch Litig.*,
  257 F. Supp. 3d 372, 427 (S.D.N.Y. 2017).....................................................................15, 16

*In re Hawaiian & Guamanian Cabotage Antitrust Litig.*,
  647 F. Supp. 2d 1250 (W.D. Wash. 2009)........................................................................4, 5

*In re Potash Antitrust Litig.*,
  667 F. Supp. 2d 907 (N.D. Ill. 2009) ...............................................................................13, 14

*In re Refrigerant Compressors Antitrust Litig.*,
  No. 2:09-md-02042, 2012 U.S. Dist. LEXIS 80269 (E.D. Mich. June 11, 2012)....................5

*In re Tableware Antitrust Litig.*,
  363 F. Supp. 2d 1203 (N.D. Cal. 2005) ...............................................................................6

*Jung v. Ass'n of Am. Med. Colls.*,
  300 F. Supp. 2d 119 (D.D.C. 2004) .....................................................................................7

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*,
  725 F.3d 718 (7th Cir. 2013) ....................................................................................7, 8, 9, 10

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)............................................................................................................11

*Mgmt. Insights, Inc. v. CIC Enters., Inc.*,
  194 F. Supp. 2d 520 (N.D. Tex. 2001) ..................................................................................9

*Mich. Div. - Monument Builders of N.A. v. Mich. Cemetery Ass'n*,
  458 F. Supp. 2d 474 (E.D. Mich. 2006)...............................................................................6, 7

*NicSand, Inc. v. 3M Co.*,
  507 F.3d 442 (6th Cir. 2007) .............................................................................................12, 13

*Ocean House Condo Ass'n v. Td Bank, N.A.*,
  2017 Me. Super. LEXIS 71 (York Cty. Super. Ct. May 11, 2017) .........................................15

*Re/Max Int'l, Inc. v. Realty One, Inc.*,
  173 F.3d 995 (6th Cir. 1999) ..............................................................................................14

*Rollolazo v. BMW of N. Am. LLC*,
  No. CV 16-00966 BRO (SSx), 2017 U.S. Dist. LEXIS 181157 (C.D. Cal. Feb. 3, 2017)......16

*Schechner v. Whirlpool Corp.*,
  237 F. Supp. 3d 601, 618 (E.D. Mich. 2017)............................................................15, 16, 17

*Sierra Club v. Morton*,
  405 U.S. 727 (1972)............................................................................................................12

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
  552 F.3d 430 (6th Cir. 2008) ................................................................................................6

*United States v. Nat'l City Lines*,
  334 U.S. 573 (1948)..............................................................................................................9

*United States v. Scophony Corp. of Am.*,
  333 U.S. 795 (1948)............................................................................................................10

*Universal Coops., Inc. v. AAC Flying Serv.*,
  710 F.3d 790 (8th Cir. 2013) ..............................................................................................14

## FEDERAL AND STATE STATUTES

15 U.S.C. § 22.............................................................................................................1, 7, 10

A.C.A. § 4-88-107(a)(10) ....................................................................................................14

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(3)...........................................................................................................1, 7

## I.        INTRODUCTION

Rather than allege facts about CMA individually, EPPs rely on the fact of indictment and generic and undifferentiated allegations regarding "Defendants" to assert that CMA participated in an alleged conspiracy regarding automotive steel tubes.   Courts have held that merely parroting language from an indictment is insufficient to state a claim for relief in a civil action. CMA has not pleaded guilty to participating in any conspiracy, and EPPs cannot satisfy their pleading burden as to CMA merely with references to the fact of indictment and undifferentiated allegations.  EPPs, therefore, have failed to state a claim against CMA under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In addition, venue in this District is improper as to CMA.   Under the plain terms of Section 12 of the Clayton Act, 15 U.S.C. § 22, venue is appropriate in a judicial district where a defendant "is an inhabitant," where "it may be found," or where it "transacts business."   As shown by EPPs' own allegations, CMA is not an inhabitant of, cannot be found in, and does not transact business in this District.  Venue, therefore, is improper and the Court should dismiss the Complaint under Rule 12(b)(3) of the Federal Rules of Civil Procedure.

EPPs' claims should be dismissed for lack of Article III standing and antitrust standing. EPPs assert only that they purchased automobiles that may or may not have contained steel tubes manufactured by Defendants.  EPPs' claimed injuries are too remote and speculative to confer standing under either Article III of the Constitution or case law imposing special requirements for purported antitrust claims.

Pursuant to the parties' stipulation, CMA incorporates and preserves for appeal all arguments on state-specific grounds previously raised in this MDL.  CMA also seeks dismissal

of state law claims for the reasons set forth below, which have not yet been raised by other Defendants in this MDL.

## II.      STATEMENT OF FACTS

As correctly alleged in EPPs' Complaint, CMA is incorporated in Indiana and maintains its principal place of business in Lebanon, Kentucky.  Compl. ¶ 76.  CMA operates a facility in Kentucky and also conducts business in Texas.  *Id.* ¶¶ 18, 76.  CMA manufactures, markets, and sells steel tubes in the United States.  *Id.* ¶ 76.  CMA is the wholly-owned subsidiary of the Japanese company Maruyasu Industries Co., Ltd.  *Id.*  For purposes of the Complaint, EPPs seek to define "Maruyasu" as the corporate family consisting of two separate named defendants, CMA and its parent, Maruyasu Industries Co., Ltd., and do not otherwise distinguish between them.  *Id.* ¶¶ 1, 74.  The Complaint further seeks to attribute the acts of the employees or agents of either company as "acts on behalf of every company in that family."  *Id.* ¶74.

EPPs do not expressly allege that CMA individually had knowledge of, or participated in, any conspiracy, but instead allege that "Maruyasu" joined a conspiracy to rig bids, fix prices, and allocate customers for steel tubes.  *Id.* ¶¶ 4, 8, 18.  In support of this allegation, EPPs allege that in June 2016, a federal grand jury returned an indictment against CMA, its parent company, and four individuals, alleging a conspiracy to fix prices, allocate customers, and rig bids (hereinafter "the Indictment").  *Id.* ¶¶ 6, 102-03.  From there, EPPs copy and paste the factual allegations from the Indictment, stating that "[a]ccording to the criminal Indictment, Maruyasu Industries Co., Ltd., Curtis-Maruyasu America, Inc., Hirade, Murai, Kobayashi, Shigematsu, and their co-conspirators" carried out a conspiracy by engaging in certain conduct.  *Id.* at ¶ 103.  The Complaint, like the Indictment, fails to identify which of the alleged co-conspirators engaged in any of the alleged meetings, information exchanges, or agreements not to compete.  *Id.* ¶ 103(a)-

(f).  No specific alleged conduct is attributed to CMA.  While EPPs' Complaint summarily asserts that CMA's activities in the United States were "under the control and direction" of its Japanese parent (*id.* ¶ 78), that allegation is unsupported by any facts and, in any event, does not answer the question of what conspiratorial activities EPPs allege are attributable to CMA.

## III.    ARGUMENT

### A.    EPPs Fail to Present Factual Allegations Plausibly Stating a Claim that CMA Engaged in a Price-Fixing Conspiracy

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, EPPs must allege facts that, if proven, would entitle them to relief.  *First Am. Title Co. v. DeVaugh*, 480 F.3d 438, 443 (6th Cir. 2007).  The U.S. Supreme Court requires plaintiffs to plead "enough facts to state a claim [for] relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[P]leadings that, because they are no more than conclusions, are not entitled to the assumption of truth.").  In an antitrust case, the complaint's allegations "must be specific enough to establish the relevant 'who, what, where, when, how or why.'"  *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 445 (6th Cir. 2012) (quoting *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008)).  "Furthermore, they must 'specify how [each] defendant [was] involved in the alleged conspiracy.'"  *Carrier Corp.*, 673 F.3d at 445 (quoting *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009)).

Here, EPPs have not alleged facts sufficient to state a plausible claim against CMA.  They have not alleged facts to show that CMA individually was part of, knew about, or actively participated in an overarching scheme regarding steel tubes.  EPPs' conclusory and

undifferentiated allegations against CMA fall well short of these requirements.

1. **EPPs' Allegations of Anticompetitive Conduct Relating to Other Auto Parts by Other Defendants in Other Cases Do Not Make EPPs' Claims Against CMA "Plausible"**

EPPs' Complaint devotes considerable space to describing guilty pleas, indictments, and public statements by antitrust authorities regarding investigations of conduct related to various other automotive parts and other companies (not defendants in this action). *See* Compl. ¶¶ 114-30, 132-56, 158-60. These allegations, spread over 45 paragraphs and representing almost a quarter of EPPs' Complaint preceding their claims for relief, concern other cases that do not involve CMA or the steel tubes market, and EPPs do not allege otherwise. The Complaint's voluminous descriptions of indictments, convictions, and investigations of *other* companies and their employees — regarding different automotive parts — do not suffice to plausibly suggest that CMA participated in a conspiracy to restrain competition in the supply of steel tubes. *See In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 647 F. Supp. 2d 1250, 1258 (W.D. Wash. 2009) (rejecting plaintiffs' theory of "cross-fertilization" — reliance on plea agreements for antitrust violations in a particular ocean-trade market — to support their claim of defendants' anticompetitive conduct in *different* ocean-trade markets). These allegations do not speak to any alleged conspiracy as to steel tubes generally, or CMA's participation individually.

2. **EPPs Have Not Alleged Facts Plausibly Stating a Claim that CMA Engaged in a Price-Fixing Conspiracy Regarding Steel Tubes**

EPPs' allegations related to steel tubes are limited merely to the fact of a guilty plea by another Defendant and a copy-and-paste recitation of the Indictment's allegations, neither of which allege facts that plausibly state a claim that CMA engaged in a price-fixing conspiracy regarding steel tubes. Compl. ¶¶ 7-9, 18, 89-90, 102-11, 157. The Complaint, like the

Indictment and the Usui Information, does not differentiate its general allegations among the alleged co-conspirators.  While a plaintiff may rely, in part, on governmental investigations, a plaintiff must also "undertake his own reasonable inquiry and frame his complaint with allegations of his own design."  *In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 647 F. Supp. 2d at 1258 n.2 (quoting *In re Tableware Antitrust Litig.*, 363 F. Supp. 2d 1203, 1205 (N.D. Cal. 2005)).  EPPs may copy and paste allegations from the Indictment and a co-defendants' Information and plea; however, these allegations still must specify how CMA was involved in the alleged conspiracy in order to state a claim.

Here, the EPPs fail to state a claim specific to CMA.  For example, the Complaint states: "[a]ccording to the criminal Indictment, Maruyasu Industries Co., Ltd., Curtis-Maruyasu America, Inc., Hirade, Murai, Kobayashi, Shigematsu, and their co-conspirators" carried out a conspiracy by engaging in certain conduct.  *Id*. ¶ 103; *see also id.* ¶111 (recounting Usui Information and attributing actions to "co-conspirators" without differentiation).  The Complaint, like the Indictment, fails to identify which of the alleged co-conspirators engaged in any of the alleged meetings, information exchanges, or agreements not to compete.  *Id.* ¶ 103(a)-(f).  Moreover, throughout the Complaint, EPPs use the catch-all term "Defendants" (*see, e.g.*, Compl. ¶¶ 1, 3-4, 10, 12, 14-21, 86, 88-91) to cover multiple, distinct entities, failing to differentiate and identify what CMA allegedly did, as is required of EPPs here.  *See In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2012 U.S. Dist. LEXIS 80269, at *31 (E.D. Mich. June 11, 2012) (granting motion to dismiss as to certain defendants where complaint relied on vague allegations as to "defendants" without "specific factual allegations as to the numerous individual defendants named in the case").  Similarly flawed is EPPs' attempt to define "Maruyasu" to include both Defendants Maruyasu and CMA, two separate, independent

corporate entities, rather than meet the pleading requirements of *Twombly* as to each defendant. Such "[g]eneric pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy," is insufficient to allege an antitrust conspiracy claim under *Twombly*. *Total Benefits*, 552 F.3d at 436-37 (citing *Twombly*, 550 U.S. at 565 n.10); *see also Mich. Div. - Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 458 F. Supp. 2d 474, 485 (E.D. Mich. 2006) (dismissing an antitrust conspiracy claim where plaintiffs used the term "defendants" to apply to numerous parties without specific allegations as to the individual defendants) *aff'd in relevant part*, 524 F.3d 726, 737, 740 (6th Cir. 2008).

EPPs' remaining allegations are undifferentiated and boilerplate legal conclusions that "Defendants and their co-conspirators (as yet unknown) agreed . . . and conspired to fix, raise, maintain and/or stabilize prices, rig bids, and allocate the market and customers" for steel tubes. Compl. ¶ 4. These types of vague, generic allegations do not satisfy the pleading standard of *Twombly*. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50-51 (2d Cir. 2007) (allegations of agreement "without any specification of any particular activities by any particular defendant" fail to satisfy *Twombly* (internal quotation marks omitted)).

"Simply saying 'me too' after a governmental investigation does not state a claim." *In re Tableware*, 363 F. Supp. 2d at 1205. Because EPPs never allege specific facts to show that CMA — as distinct from any other Defendant, including from Defendant Maruyasu — joined a conspiracy by agreeing to and participating in a common scheme, EPPs fail to state a claim. *See Monument Builders of N. Am.*, 458 F. Supp. 2d at 485 (citing *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 164 (D.D.C. 2004)). Rather, EPPs must, at a minimum, allege that "each

individual defendant joined the conspiracy and played some role in it." *Jung*, 300 F. Supp. 2d at 164.  EPPs have failed to set forth specific facts that CMA knowingly entered into and participated in the alleged conspiracy.

### B.      EPPs Do Not Establish That Venue Is Proper in This District

Under Section 12 of the Clayton Act, "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."  15 U.S.C. § 22.  EPPs, however, do not and cannot satisfy any of these grounds for establishing that venue is proper in this District.  As such, EPPs' Complaint against CMA must be dismissed for lack of proper venue.  *See* Fed. R. Civ. P. 12(b)(3).

### 1.      EPPs Must Meet the Clayton Act's Venue Requirements

At the outset, it is important to note that EPPs are not absolved from establishing the Clayton Act's venue requirements merely because they have invoked Section 12's nationwide service-of-process provision.  EPPs assert that venue is proper under both the special venue provision of the Clayton Act as well as the general venue provision of 28 U.S.C. § 1391.  Compl. ¶ 14.  However, because EPPs have taken advantage of Section 12's allowance of service "wherever" a defendant may be found, the Court must answer a critical question:  "[I]f a plaintiff chooses to take advantage of Section 12's nationwide service-of-process provision (and thus in effect rely on nationwide personal jurisdiction), must she then establish venue under Section 12 as well, or may she mix and match . . . ?"  *KM Enters. Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 725 (7th Cir. 2013).

Although the Sixth Circuit has yet to answer, the dominant rule among the circuits is that in order to take advantage of worldwide service, a plaintiff must also allege facts that satisfy the particular requirements of venue under Section 12. *See, e.g.*, *id.* at 728 (holding that Section 12's venue and service provisions should be read together); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005) (same); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000) ("A party seeking to take advantage of Section 12's liberalized service provisions must follow the dictates of both of its clauses."). *In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d 1269, 1292 (N.D. Ala. 2016) (explaining that the Eleventh Circuit has not addressed the circuit split and ultimately joining the "majority . . . approach, as best articulated by the Seventh Circuit in its *KM Enterprises* opinion"). *But see In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 297 (3d Cir. 2004) (explaining that Section 12's service-of-process provision does not require satisfaction of Section 12's venue provision); *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1408-13 (9th Cir. 1989) (holding that Section 12's service-of-process and venue provisions should be read independently because "as a general matter, courts have interpreted special venue provisions to supplement, rather than preempt, general venue statutes").

The majority's approach — requiring plaintiffs to comply with both clauses of Section 12 — provides the soundest interpretation of the statute. As a matter of statutory interpretation, "[t]he language of the statute is plain, and its meaning seems clear: . . . invocation of the nationwide service clause rests on satisfying the venue provision." *GTE New Media*, 199 F.3d at 1350; *accord Daniel*, 428 F.3d at 424. This straightforward statutory command means that EPPs, having availed themselves of the Clayton Act's nationwide service-of-process provision to serve CMA in Indiana, must therefore establish venue based not on 28 U.S.C. § 1391, but on 15

U.S.C. § 22.

Reading the statute to permit independent general venue here would render Section 12's venue clause superfluous and "completely eviscerate[] any semblance of a venue inquiry in antitrust cases involving corporate defendants . . . [which] Congress could not have intended." *Mgmt. Insights, Inc. v. CIC Enters., Inc.*, 194 F. Supp. 2d 520, 532 (N.D. Tex. 2001); *see also KM Enters.*, 725 F.3d at 729 ("[A]llowing antitrust plaintiffs to mix and match Section 12's service-of-process provision with Section 1391's general venue provision renders the venue inquiry meaningless . . . . This runs contrary to Congress's apparent intent in passing Sections 12 and 1391 that there be *some* limits on venue, in antitrust cases specifically and in general."); *United States v. Nat'l City Lines*, 334 U.S. 573, 588 (1948) (explaining that the purpose of venue statutes is to prevent plaintiffs from having "free rein to haul defendants hither and yon at their caprice").

Section 12 "of the Clayton Act enlarged the specific antitrust venue provision contained in Section 7 of the Sherman Act." *In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d at 1292; *see also KM Enters.*, 725 F.3d at 730 ("Section 12 venue is broader than venue under either the Sherman Act or the general venue statute as it existed in 1914 . . . ."). However, in enacting Section 12, Congress "was . . . quite careful in expanding venue, rejecting several broader proposals than the one finally enacted in Section 12." *Daniel*, 428 F.3d at 425. Thus, Congress "created specific limits on venue — limits that for many corporations would result in a set of permissible districts much smaller than the entire United States." *KM Enters.*, 725 F.3d at 730. Accordingly, EPPs must establish that venue is proper in this District under Section 12 of the Clayton Act.

## 2. EPPs Cannot Meet the Clayton Act's Requirements for Venue under Section 12

EPPs have failed to establish that venue is proper under Section 12 because they have not, and cannot, show that CMA is an "inhabitant," can be "found," or "transacts business" in this District.  15 U.S.C. § 22.  First, a corporation is an "inhabitant" of the district where it is incorporated.  *KM Enters.*, 725 F.3d at 725.  CMA is an inhabitant of Indiana, its state of incorporation.  *See* Compl. ¶ 76.  Second, a corporation can be "found" in a district where it has a "presence" or is engaging in "continuous local activity."  *Armco Steel Co. v. CSX Corp.*, 790 F. Supp. 311, 319 (D.D.C. 1991) (internal quotation marks omitted).  EPPs do not allege that CMA maintains a presence in this District or engages in any local activity within this District, and thus, CMA cannot be "found" here.

Third, a corporation "transacts business" in a district when it conducts "everyday business . . . of any substantial character" there.  *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948) (internal quotation marks omitted).  When assessing venue, a court must evaluate the substantiality of a defendant's business within the district.  *Eastman Outdoors Inc. v. Archery Trade Ass'n*, No. 05-74015, 2006 U.S. Dist. LEXIS 42835, at *17 (E.D. Mich. June 6, 2006) (finding venue appropriate for claims against a trade association "because nearly 10% of its members reside in Michigan, it actively solicits Michigan residents to join, and because it contributes to, organizes, and meets with Michigan officials, as well as directs and participates in [youth] programs in Michigan").  EPPs fail to allege that CMA conducts a substantial amount of business in this District (or any district for that matter), thus preventing the Court from finding that venue is satisfied.  *See, e.g.*, *KM Enters.,* 725 F.3d at 731 (finding defendant's contacts *de minimis* for purposes of the transacting-business inquiry when its products were used only in a

few places in the district, it did not install its products in the district, and its direct sales into the district were negligible).  Accordingly, because EPPs cannot demonstrate that CMA is an "inhabitant," can be "found," or "transacts business" in this District, EPPs' Complaint must be dismissed against CMA for lack of proper venue.

### C.    EPPs Lack Constitutional Standing to Assert Claims Against CMA

To demonstrate Article III standing, a plaintiff must allege an injury that is (a) concrete and particularized and (b) actual or imminent, rather than conjectural or hypothetical.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The alleged injury must be fairly traceable to the defendant's conduct, and not the result of the independent action of a third party, and of a type that can be redressed by the court.  *Id*. at 560-61.  For the same reasons discussed in the Defendants' Collective Motions to Dismiss End-Payors' and Auto Dealers' Consolidated Amended Class Action Complaints submitted in numerous previous cases, which CMA joins and incorporates here by reference, EPPs lack Article III constitutional standing to assert claims against CMA because they have not sufficiently pleaded an injury-in-fact that is traceable to CMA.  *See* No. 12-cv-00203, ECF No. 45 at 5-8; No. 12-cv-00303, ECF No. 56 at 7-13; No. 12-cv-00403, ECF No. 60 at 8-11; No. 12-cv-00503, ECF No. 73 at 9-11; No. 12-cv-00603, ECF No. 65 at 6-8; No. 13-cv-00803, ECF No. 36 at 2-3; No. 13-cv-02203, ECF No. 51 at 2 n.6; No. 15-cv-03303, ECF No. 23 at 5-6.

Like the EPPs who asserted substantially identical claims in previous cases, EPPs here purchased steel tubes indirectly as one of thousands of components in a new vehicle, but fail to allege any facts to show which vehicle models they purchased, that the alleged conspiracy involved those models, or how any overcharge was passed on to them.  EPPs' bare assertion that the "changes in the prices paid by direct purchasers of Automotive Steel Tubes affect prices paid

by indirect purchasers of Vehicles containing Automotive Steel Tubes" (Compl. ¶ 175) is insufficient to permit a reasonable conclusion that these EPPs individually suffered actual injury. *See, e.g.*, *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451 (6th Cir. 2007) (en banc) (noting that a "'naked assertion' of antitrust injury . . . is not enough; an antitrust claimant must put forth factual 'allegations plausibly suggesting (not merely consistent with)' antitrust injury" (quoting *Twombly*, 550 U.S. at 557)).  EPPs summarily assert that they each absorbed some portion of the alleged price increase (Compl. ¶¶ 172, 177), and assert only that economic theory can be used to quantify an injury, which is insufficient to allege an injury in fact.  *See* Compl. ¶¶ 178-81.  These omissions are fatal.  *See Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972) ("[T]he 'injury in fact' test requires more than an injury to a cognizable interest.  It requires that the party seeking review be himself among the injured.").

## D.    EPPs Lack Antitrust Standing to Assert Claims Against CMA

For the same reasons discussed in the Defendants' Collective Motions to Dismiss End-Payors' and Auto Dealers' Consolidated Amended Class Action Complaints submitted in numerous previous cases, which CMA joins and incorporates here by reference, EPPs lack antitrust standing to assert claims against CMA because (1) EPPs did not participate in the relevant market; (2) EPPs' alleged injuries are indirect and attenuated; (3) EPPs' claimed injuries are inherently speculative and unreasonably complex; and (4) denying standing will not diminish enforcement of the antitrust laws.  *See* No. 12-cv-00203, ECF No. 45 at 15-20; No. 12-cv-00303, ECF No. 56 at 18-27; No. 12-cv-00403, ECF No. 60 at 15-21; No. 12-cv-00503, ECF No. 73 at 14-23; No. 12-cv-00603, ECF No. 65 at 10-13.

Distinct from constitutional standing, the doctrine of antitrust standing ensures that only certain claimants may seek redress for an alleged antitrust injury.  "Harm to the antitrust plaintiff

is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983) ("*AGC*"); *see also NicSand, Inc.*, 507 F.3d at 449.

The Defendants' arguments in prior automotive parts cases are relevant as to steel tubes. As there, EPPs here did not participate in the relevant market because they did not purchase steel tubes from CMA. Rather, EPPs are downstream purchasers of vehicles that may or may not include products manufactured by the Defendants. *See, e.g., In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 939-40 (N.D. Ill. 2009) ("[Plaintiffs] failed to show they are participants in the relevant market [as purchasers of products containing potash in a downstream market], and, as a result, have not satisfied the antitrust injury requirement."). Like in other automotive parts cases, EPPs here acknowledge that their claimed injuries are indirect and depend on a complex examination of a distribution chain that extends beyond the United States. *See* Compl. ¶ 86 (acknowledging that automotive manufacturers or component manufacturers, not EPPs, are direct purchasers); *id.* ¶ 87 (acknowledging that OEMs purchased steel tubes in "the United States and elsewhere"). EPPs' claimed injuries implicate complex pass-through issues that require disentangling overlapping claims from others in the distribution chain, including OEMs, Tier 1 suppliers, trading companies, and automotive dealers, to prevent duplicative recovery. *See, e.g.*, *AGC*, 459 U.S. at 544 n.51 ("[T]he task of disentangling overlapping damages claims is not lightly to be imposed upon potential antitrust litigants, or upon the judicial system." (quotation omitted)).

Finally, as with the other automotive parts cases, the existence of an "identifiable class of persons who would have the necessary incentives to vindicate the public interest by pursuing

[an] antitrust claim . . . diminish[s] the justification for allowing a more remote party to enforce the antitrust laws." *In re Potash*, 667 F. Supp. 2d at 941 (citing *AGC*, 459 U.S. at 542).  That is unquestionably the case here, where automobile manufacturers that purchased steel tubes directly from Defendants clearly exist to enforce the antitrust laws.  Dismissal of EPPs' claims in this action, therefore, will not "result in antitrust violations going 'undetected or unremedied.'" *Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995, 1023 (6th Cir. 1999).  Because none of the *AGC* factors favor standing, this Court should find that EPPs lack antitrust standing to bring their antitrust claims in each state that recognizes and applies the *AGC* factors.

### E.    EPPs' State Law Claims Should Be Dismissed

Pursuant to the parties' stipulation submitted to the Court on January 29, 2018, CMA adopts and preserves for appeal all arguments on state-specific grounds raised by any defendant in this MDL.  CMA now seeks the application of each of the Court's prior rulings granting dismissal of state law claims.  As argued in those prior motions, EPPs' state law claims should be dismissed with prejudice against CMA.  Moreover, since the time of those prior rulings, additional authorities supporting the dismissal of the following state law claims have been issued and provide grounds for the Court to reconsider the application of certain prior rulings to the instant case:

**Arkansas:**    This Court has held that price-fixing claims are cognizable under the ADTPA's catchall provision, which prohibits "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade."  A.C.A. § 4-88-107(a)(10); *see In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 859 (E.D. Mich. 2014).  The U.S. Court of Appeals for the Eighth Circuit in *Universal Cooperatives, Inc. v. AAC Flying Service, Inc.*, 710 F.3d 790, 795-96 (8th Cir. 2013), used interpretive guidance from the Arkansas Supreme Court

to significantly narrow the scope of the ADTPA's catchall provision.  Recently, several courts have relied on *Universal Cooperatives* to find that the ADTPA does not prohibit price-fixing conspiracies.  *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2017 U.S. Dist. LEXIS 191754, at *127-28 (N.D. Ill. Nov. 20, 2017) (citing *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 U.S. Dist. LEXIS 84152, at *35 (N.D. Ill. June 29, 2015) and *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1166-67 (N.D. Cal. 2015)). *Universal Cooperatives* has not been previously raised in this MDL.

**Maine:**  Because EPPs seek damages under the Maine law, their unjust enrichment claim fails because an adequate legal remedy is available.  *See, e.g.*, *Ocean House Condo Ass'n v. Td Bank, N.A.*, 2017 Me. Super. LEXIS 71, at *3 (York Cty. Super. Ct. May 11, 2017) ("[T]o pursue unjust enrichment in equity, the plaintiff must lack an adequate remedy at law.").  The unjust enrichment claim is not saved by the liberal pleading standard of Rule 8(d) of the Federal Rules of Civil Procedure.  *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 618-19 (E.D. Mich. 2017) (citing Supreme Court precedent to hold that "state law regarding the availability of an unjust enrichment claim is so intertwined with a substantive right under state law that Rule 8's alternative pleading provision may not be enforced . . . . if the state-court would prohibit the same").  This Court has not previously considered whether a claim for damages is an adequate remedy under Maine law.

**Massachusetts:**  This Court previously allowed plaintiffs to plead equitable remedies in the alternative to Massachusetts statutory claims.  *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1020-21 (E.D. Mich. 2014).  Since then, other courts addressing this issue have held that Massachusetts law does not allow for such alternative pleading.  *See In re GM LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 419 (S.D.N.Y. 2017) (dismissing plaintiffs' unjust

enrichment claim because plaintiff had a cause of action under the Massachusetts consumer protection statute and thus had an adequate remedy at law); *Gowen v. Benchmark Senior Living, LLC*, 2017 Mass. Super. LEXIS 92, at *10 (Suffolk Cty. Super. Ct. May 5, 2017) (observing at the pleading stage that a "claim for unjust enrichment appears to be redundant of [Plaintiff's] statutory claim," and thus it "appears that the separate unjust enrichment claim is improper"). The unjust enrichment claim is not saved by the liberal pleading standard of Rule 8(d) of the Federal Rules of Civil Procedure. *Schechner*, 237 F. Supp. 3d at 618-19.

**Michigan:**  This Court previously held that for purposes of an unjust enrichment claim, "Michigan law does not require a benefit to be conferred directly by plaintiff to a defendant." *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d at 1021.   Since then, however, other courts addressing the issue have clarified that "Michigan courts 'only employ the doctrine of unjust enrichment in cases where the defendant directly receives a benefit from the plaintiff.'" *In re GM LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 427 (S.D.N.Y. 2017) (quoting *Smith v. Glenmark Generics, Inc., USA*, No. 315898, 2014 Mich. App. LEXIS 1524, at *1 (Mich. Ct. App. Aug. 19, 2014)).   Indeed, "courts have consistently dismissed unjust enrichment claims under Michigan law where the benefit to the defendant was conferred by a third party," especially in circumstances like here "involving consumer plaintiffs and a remote manufacturer." *Id.* at 427-28 (internal quotation marks omitted); *see also Schechner*, 237 F. Supp. 3d at 618 (dismissing plaintiffs' unjust enrichment claims because "Michigan law requires a direct benefit or some sort of direct interaction").   Additionally, because EPPs seek damages under the Michigan antitrust law, their unjust enrichment claim fails because an adequate legal remedy is available. *See, e.g.*, *Rollolazo v. BMW of N. Am. LLC*, No. CV 16-00966 BRO (SSx), 2017 U.S. Dist. LEXIS 181157, at *55 (C.D. Cal. Feb. 3, 2017) (dismissing plaintiffs' unjust enrichment

claim because "[p]laintiffs set forth both legal and equitable claims under Michigan law, seeking relief for the same subject matter").  Moreover, unjust enrichment claims are not saved by the liberal pleading standard of Rule 8(d) of the Federal Rules of Civil Procedure — an issue this District, but not this Court, has addressed.  *Schechner*, 237 F. Supp. 3d at 618-19.  This Court has not previously considered whether a claim for damages is an adequate remedy under Michigan law.

**Rhode Island:**  This Court previously "determined that price-fixing injuries fall within the scope of the [Rhode Island consumer protection] statute."  *In re Auto. Parts Antitrust Litig.*, Nos. 12-md-02311; 2:12-cv-00102; 2:12-cv-00103, 2013 U.S. Dist. LEXIS 80338, at *97-98 (E.D. Mich. June 6, 2013); *see also In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d at 1014 (incorporating prior ruling).  However, on July 15, 2013, shortly after the Court's initial ruling, the Rhode Island state legislature amended the statute to clarify that *Illinois Brick* does not preclude indirect purchasers from recovering claims for damages arising from violations of the state consumer protection statute.  Since then, courts have held that this amendment allows for prospective claims only, barring claims for damages that allege unlawful conduct taking place before July 15, 2013, such as the ones EPPs bring here.  *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, 2017 U.S. Dist. LEXIS 191754, at *111 ("Plaintiffs' Rhode Island claims are only cognizable to the extent they accrued after July 15, 2013."); *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, 1:14-md-2508, 2015 U.S. Dist. LEXIS 121620, at *63 (E.D. Tenn. June 24, 2015) (dismissing "Indirect Purchasers' claims brought pursuant to Rhode Island's Antitrust Act" before July 2013); *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 253 (D. Conn. 2015) (applying the Rhode Island statute prospectively "[i]n the absence of evidence of the Rhode Island legislature's intent to the contrary").

Accordingly, the Court should dismiss EPPs' unjust enrichment claims under the laws of Maine, Massachusetts, and Michigan, and dismiss EPPs' claims under the consumer protection laws of Arkansas and Rhode Island.

## IV.   CONCLUSION

For the foregoing reasons, EPPs' claims against CMA in their Second Consolidated Amended Class Action Complaint should be dismissed in their entirety with prejudice.

Respectfully submitted,

**WHITE & CASE** LLP

Dated:    February 2, 2018

By:   */s/ Christopher M. Curran*
        Christopher M. Curran

Christopher M. Curran
Email: ccurran@whitecase.com
Eileen M. Cole
Email: ecole@whitecase.com
Samuel J. Sharp
Email: samuel.sharp@whitecase.com
**WHITE & CASE** LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone:  (202) 626-3600
Facsimile:   (202) 639-9355

*Counsel for Curtis-Maruyasu America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 2, 2018, I caused the foregoing Motion and Memorandum of Law in Support of Curtis-Maruyasu America, Inc.'s Motion to Dismiss End-Payors' Second Consolidated Amended Class Action Complaint to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notifications of such filings to all counsel of record.

*/s/ Christopher M. Curran*
Christopher M. Curran
