**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 2:12-md-02311 Honorable Marianne O. Battani |
| IN RE AUTOMOTIVE STEEL TUBES | : : : | Case No. 2:16-cv-04003 |
| THIS DOCUMENT RELATES TO: END-PAYOR ACTION | : : : : | |

**END-PAYOR PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH THE SANOH DEFENDANTS AND PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that as soon as this motion may be heard before the Honorable Marianne O. Battani, End-Payor Plaintiffs ("EPPs") will and do hereby respectfully move the Court for an order preliminarily approving a proposed settlement between EPPs and Defendants Sanoh Industrial Co., Ltd. and Sanoh America, Inc. (together, "Sanoh") in the amount of U.S. $8,360,000.00 and provisional certification of the proposed Settlement Class in the above-entitled action.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support thereof, all filings in the MDL Litigation, as defined in the Memorandum Law in support of this Motion, and such other arguments as may be presented to the Court.

Date: May 6, 2019

Respectfully submitted,

*/s/ Elizabeth T. Castillo*
Adam J. Zapala
Elizabeth T. Castillo
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Hollis Salzman
William V. Reiss
David Rochelson
Noelle Feigenbaum
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
WReiss@RobinsKaplan.com
DRochelson@RobinsKaplan.com
NFeigenbaum@RobinsKaplan.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

Floyd G. Short
**SUSMAN GODFREY L.L.P.**
1201 3rd Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 373-7381
Facsimile: (206) 516-3883
fshort@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed End-Payor Plaintiff Classes*

E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Counsel for the Proposed End-Payor Plaintiff Classes*

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 2:12-md-02311 Honorable Marianne O. Battani |
| IN RE AUTOMOTIVE STEEL TUBES | : : : | Case No. 2:16-cv-04003 |
| THIS DOCUMENT RELATES TO: END-PAYOR ACTION | : : : : | |

## MEMORANDUM OF LAW IN SUPPORT OF END-PAYOR PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH THE SANOH DEFENDANTS AND <u>PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS</u>

**STATEMENT OF ISSUES PRESENTED**

1. Whether End-Payor Plaintiffs' ("EPPs") settlement with Sanoh Industrial Co., Ltd. and Sanoh America, Inc. (together, "Sanoh"), embodied in the Settlement Agreement entered into on April 10, 2019 ("Settlement Agreement") and attached hereto as Exhibit 1, is fair, reasonable, and adequate, and should be preliminarily approved?

   Answer: Yes.

2. Whether the Court should provisionally certify the Settlement Class under Federal Rule of Civil Procedure ("Rules") 23(a) and (b)(3)?

   Answer: Yes.

3. Whether the Court should stay the proceedings by the EPPs against Sanoh in accordance with the terms of the Settlement Agreement?

   Answer: Yes.

4. Whether the Court should authorize End-Payor Plaintiffs to provide notice of the Settlement Agreement to Settlement Class members at a later date, in a form to be approved in advance by this Court?

   Answer: Yes.

5. Whether the Court should appoint Interim Co-Lead Class Counsel for the EPPs as Settlement Class Counsel for this settlement?[1]

   Answer: Yes.

---

[1] Unless otherwise defined, capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Fed. R. Ci*v*. P. 23

*Amchem Prods*., *Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc*. *v. Conn*. *Ret*. *Plans & Trust Funds*, 133 S. Ct. 1184 (2013)

*Cason-Merenda v. VHS of Mich*., *Inc*., 296 F.R.D. 528 (E.D. Mich. 2013), *vacated*, Case No. 13-0113, 2014 U.S. App. LEXIS 4447 (6th Cir. Jan. 6, 2014), *reinstated in full*, Case No. 06-15601, 2014 U.S. Dist. LEXIS 29447 (E.D. Mich. Mar. 7, 2014)

*Griffin v. Flagstar Bancorp*, *Inc*., 2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec. 12, 2013)
*In re Am. Med*. *Sys*., *Inc*., 75 F.3d 1069 (6th Cir. 1996)

*In re Cardizem CD Antitrust Litig*., 218 F.R.D. 508 (E.D. Mich. 2003)

*In re Corrugated Container Antitrust Litig*., MDL 310, 1981 U.S. Dist. LEXIS 9687 (S.D. Tex. June 4, 1981)

*In re Foundry Resins Antitrust Litig*., 242 F.R.D. 393 (S.D. Ohio 2007)

*In re Linerboard Antitrust Litig*., 292 F. Supp. 2d 631 (E.D. Pa. 2003)

*In re Packaged Ice Antitrust Litig*., 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig*., 527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp*. *Front-Loading Washer Prods*. *Liab*. *Litig*., 722 F.3d 838 (6th Cir. 2013)

*IUE-CWA v. Gen*. *Motors Corp*., 238 F.R.D. 583 (E.D. Mich. 2006)

*Sheick v. Auto Component Carrier LCC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010)

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT .......... 4

ARGUMENT ......................................................................................................... 8

I.     The Court Should Grant Preliminary Approval Because the Proposed Settlement Falls Well Within the Range of Possible Approval. ............................ 8

II.    The Court Should Grant Preliminary Approval Because the Proposed Settlement Satisfies the Requirements of Rule 23(e) and Sixth Circuit Precedent. ........................................................................................... 11

     A.     The Class Representatives and Class Counsel Have Adequately Represented the Class (Rule 23(e)(2)(A)). ................................................. 13

     B.     The Settlement Agreement is the Result of Thorough Arm's-Length Negotiations (Rule 23(e)(2)(B)) and is Fair, Adequate and Reasonable in the Opinion of Highly Experienced Class Counsel (Sixth Circuit's Third Factor). .................................................................. 14

     C.     The Proposed Settlement Provides The Best Possible Relief for the Class. ........................................................................................... 15

           i.     The Proposed Settlement Achieves an Excellent Result for the Class, Particularly Given the "Costs, Risks and Delay of Trial and Appeal" (Rule 23(e)(2)(C)(i) and Sixth Circuit's First and Second Factors), and Treats Class Members Equitably (Rule 23(e)(2)(D)). ...................................... 15

           ii.     Class Counsel Proposes an Effective Method of Distributing Relief to the Class and Processing Class-Member Claims (Rule 23(e)(2)(C)(ii)). ....................................... 18

           iii.     The Settlement Does Not Propose An Award of Attorney's Fees At This Time (Rule 23(e)(2)(C)(iii)). .................................. 19

           iv.     EPPs Have Attached the Only Agreement in Connection With the Proposed Settlement (Rule 23(e)(2)(C)(iv)). ................. 19

III.     The Proposed Settlement Class Should Be Provisionally Certified Pursuant to Rule 23. ........................................................................... 20

A.    The Proposed Settlement Class Meets the Requirements of Rule 23(a) ................................................................................ 21

        i.    The Proposed Settlement Class Is So Numerous That It Is Impracticable To Bring All Class Members Before the Court. ........................................................................................ 22

        ii.    End-Payor Plaintiff Class Representatives and the Proposed Settlement Class Share Common Legal and Factual Questions................................................................................ 23

        iii.    End-Payor Plaintiff Class Representatives' Claims Are Typical of the Claims of the Members of the Proposed Settlement Class.......................................................................... 24

        iv.    Proposed Settlement Class Counsel and End-Payor Plaintiff Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Class. ........................... 25

B.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ............................................................................ 25

        i.    Common Questions of Law and Fact Predominate. ..................... 25

        ii.    A Class Action is the Superior Method to Adjudicate These Claims. ........................................................................................ 28

IV.    Notice to the Settlement Class Members. .............................................. 29

CONCLUSION.................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agretti v. ANR Freight Sys., Inc.*,
    982 F.2d 242 (7th Cir. 1992) ............................................................................9

*In re Aluminum Phosphide Antitrust Litig.*,
    160 F.R.D. 609 (D. Kan. 1995)........................................................................23

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ....................................................................22, 24

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)........................................................................25, 26, 29

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013).................................................................................21, 26

*In re Ampicillin Antitrust Litig.*,
    82 F.R.D. 652 (D.D.C. 1979)............................................................................18

*In re Automotive Parts Antitrust Litigation*,
    Master File No. 2:12-md-02311 ..........................................................1, 6, 7, 29

*Blades v. Monsanto Co.*,
    400 F.3d 562 (8th Cir. 2005) ............................................................................27

*In re Blood Reagents Antitrust Litig.*,
    283 F.R.D. 222 (E.D. Pa. 2012)........................................................................27

*Bobbitt v. Acad. of Reporting*,
    Case No. 07-10742, 2009 U.S. Dist. LEXIS 62365 (E.D. Mich. Jul. 21,
    2009) ..................................................................................................................9

*Bowers v. Windstream Ky. East, LLC*,
    Case No. 3:09-cv-440-H, 2013 U.S. Dist. LEXIS 157242 (W.D. Ky. Nov.
    1, 2013) ............................................................................................................15

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) .......................................................... *passim*

*Cason-Merenda v. VHS of Mich., Inc.*,
    296 F.R.D. 528 (E.D. Mich. 2013) .........................................................21, 23, 24, 26

*In re Chambers Dev. Sec. Litig.*,
    912 F. Supp. 822 (W.D. Pa. 1995).....................................................................16

*Clark Equip. Co. v Int'l Union of Allied Indus. Workers of Am.*,
    803 F.2d 878 (6th Cir. 1986) .......................................................................9

*Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)........................................................................27

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ....................................................................13

*In re Corrugated Container Antitrust Litig.*,
    MDL 310, 1981 U.S. Dist. LEXIS 9687 (S.D. Tex. June 4, 1981) ............17, 18

*Date v. Sony Elecs., Inc.*,
    Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095 (E.D. Mich. July 31,
    2013) .......................................................................................................23

*In re Delphi Corp. Sec. Derivatives & ERISA Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) .............................................................20

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    Case No. 02-md-1486, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5,
    2006) .......................................................................................................23

*In re Foundry Resins Antitrust Litig.*,
    242 F.R.D. 393 (S.D. Ohio 2007) ......................................................... *passim*

*Golden v. City of Columbus*,
    404 F.3d 950 (6th Cir. 2005) ....................................................................22

*Griffin v. Flagstar Bancorp, Inc.*,
    Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec.
    12, 2013) ...........................................................................................8, 23, 24

*Hale v. State Farm Mut. Auto. Ins. Co.*,
    No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13,
    2018) .......................................................................................................19

*Hefler v. Wells Fargo & Co.*,
    No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045 (N.D. Cal. Dec. 17,
    2018) .......................................................................................................11

*Hyland v. Homeservices of Am., Inc.*,
    Case No. 3:05-cv-612-R, 2008 U.S. Dist. LEXIS 90892 (W.D. Ky. Nov.
    6, 2008) ...................................................................................................22

*Int'l Union, UAW v. Ford Motor Co.*,
    Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471 (E.D.
    Mich. July 13, 2006) .............................................................................9, 24

*IUE-CWA v. Gen. Motors Corp.*,
238 F.R.D. 583 (E.D. Mich. 2006) .................................................................8

*Leonhardt v. ArvinMeritor, Inc.*,
581 F. Supp. 2d 818 (E.D. Mich. 2008) ........................................................15

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003) ............................................................17

*Marcus v. Dep't of Revenue*,
206 F.R.D. 509 (D. Kan. 2002) .....................................................................14

*Miller v. Farmers Ins. Exch.* (*In re Farmers Ins. Exch.*),
481 F.3d 1119 (9th Cir. 2007) .......................................................................16

*Miller v. Univ. of Cincinnati*,
241 F.R.D. 285 (S.D. Ohio 2006) ..................................................................22

*In re Packaged Ice Antitrust Litig.*,
Case No. 08-md-01952, 2010 U.S. Dist. LEXIS 140235 (E.D. Mich. Sept.
2, 2010) ..........................................................................................................20

*In re Packaged Ice Antitrust Litig.*,
Case No. 08-md-01952, 2010 U.S. Dist. LEXIS 77645 (E.D. Mich. Aug.
2, 2010) ..........................................................................................................10

*In re Packaged Ice Antitrust Litig.*,
Case No. 08-md-01952, 2011 U.S. Dist. LEXIS 150427 (E.D. Mich. Dec.
13, 2011) ........................................................................................................15

*In re Packaged Ice Antitrust Litig.*,
Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb.
22, 2011) ................................................................................................. *passim*

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
584 F. Supp. 2d 697 (M.D. Pa. 2008) ...........................................................17

*Rankin v. Rots*,
Case No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706 (E.D. Mich. June
28, 2006) ........................................................................................................10

*Reed v. Advocate Health Care*,
268 F.R.D. 573 (N.D. Ill. 2009) .....................................................................27

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003) ...........................................................17

*Robbins v. Koger Props., Inc.,*
    116 F.3d 1441 (11th Cir. 1997) ...................................................................16

*In re Scrap Metal Antitrust Litig.,*
    527 F.3d 517 (6th Cir. 2008) ........................................................25, 26, 27

*Sheick v. Auto Component Carrier LCC,*
    Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010) ..............................................................................................14

*In re Southeastern Milk Antitrust Litig.,*
    Case No. 2:09-md-1000, 2010 U.S. Dist. LEXIS 94223 (E.D. Tenn. Sept. 7, 2010) ...................................................................................................21

*Stout v. J.D. Byrider,*
    228 F.3d 709 (6th Cir. 2000) ......................................................................24

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.,*
    Case No. 1:01-cv-9000, 2001 U.S. Dist. LEXIS 26714 (E.D. Ohio Oct. 19, 2001) ......................................................................................................10

*Thacker v. Chesapeake Appalachia, L.L.C.,*
    259 F.R.D. 262 (E.D. Ky. 2009) .................................................................14

*In re Universal Serv. Fund Tel. Billing Practices Litig.,*
    219 F.R.D. 661 (D. Kan. 2004) ..................................................................28

*In re Uranium Antitrust Litig.,*
    617 F.2d 1248 (7th Cir. 1980) ....................................................................18

*In re Urethane Antitrust Litig.,*
    251 F.R.D. 629 (D. Kan. 2008) ..................................................................27

*In re Vitamins Antitrust Litig.,*
    209 F.R.D. 251 (D.D.C. 2002) ...................................................................26

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ...............................................................................20

*In re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516 (3d Cir. 2004) .......................................................................16

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,*
    722 F.3d 838 (6th Cir. 2013) ............................................................ *passim*

*In re Wire Harness Systems,*
    Case No. 2:12-cv-00103 (E.D. Mich.), ECF Nos. 537, 577, 628 ...............18, 19

**Other Authorities**

John M. Barkett, "The 2018 Amendments to the Federal Class Action Rule,"
    available at
    https://www.americanbar.org/content/dam/aba/administrative/litigation/ma
    terials/2017-2018/2018-sac/written-materials/miami-class-actions-
    amendments-to-the-federal-class.pdf ................................................................11

6A Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure §
    1522 (2d ed. 1990) ................................................................................................9

**Rules**

Federal Rules of Civil Procedure
    Rule 23 ..................................................................................................11, 20, 21
Rule 23(a) .................................................................................................20, 21, 24, 25
    Rule 23(a)(1) ......................................................................................................22
    Rule 23(a)(2) ................................................................................................23, 24
    Rule 23(a)(3) ......................................................................................................24
    Rule 23(a)(4) ......................................................................................................25
    Rule 23(b) ...........................................................................................................20
    Rule 23(b)(3) ...............................................................................................*passim*
    Rule 23(b)(3)(D) ................................................................................................29
    Rule 23(e) ....................................................................................................11, 12
    Rule 23(e)(1)(B) ................................................................................................12
    Rule 23(e)(2) ......................................................................................................12
    Rule 23(e)(2)(A) ................................................................................................13
    Rule 23(e)(2)(B) ................................................................................................14
    Rule 23(e)(2)(C)(i) ............................................................................................15
    Rule 23(e)(2)(C)(ii) .....................................................................................18, 19
    Rule 23(e)(2)(C)(iii) ..........................................................................................19
    Rule 23(e)(2)(C)(iv) ..........................................................................................19
    Rule 23(e)(2)(D) ................................................................................................15

Manual For Complex Litigation (Fourth) § 13.12 (2004)
    § 13.12 ..................................................................................................................9
    § 21.32 ................................................................................................................20
    § 21.63 ..................................................................................................................9
    § 21.662 ..............................................................................................................15
    § 30.41 ..................................................................................................................9

4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions (5th ed. 2014)
    § 3:10 ..................................................................................................................23
    § 13.10 ................................................................................................................10
    § 13.45 ..........................................................................................................10, 14

The End-Payor Plaintiffs ("EPPs"), on behalf of themselves and all others similarly situated, by and through the undersigned Interim Co-Lead Class Counsel, respectfully submit this memorandum in support of their motion seeking preliminary approval of a settlement with Sanoh and provisional certification of the proposed Settlement Class in the above-entitled action ("Action").

## PRELIMINARY STATEMENT

Automotive Steel Tubes are among the parts at issue in these coordinated multidistrict proceedings, *In re Automotive Parts Antitrust Litigation*, Master File No. 2:12-md-02311 ("MDL Litigation"). For the purpose of the proposed settlement, the term "Automotive Steel Tubes" has the meaning set forth in Paragraph 2 of the Second Consolidated Class Action Complaint, No. 2:16-cv-04003 (May 24, 2017), ECF No. 20 ("Compl."). *See* Settlement Agreement at ¶ 7. Automotive Steel Tubes are used in fuel distribution, braking, and other automotive systems. Compl. at ¶ 2. Automotive Steel Tubes are sometimes divided into two categories: chassis tubes and engine parts. Chassis tubes, such as brake and fuel tubes, tend to be located in the body of a vehicle. Engine parts, such as fuel injection rails, oil level tubes, and oil strainer tubes, are associated with the function of a vehicle's engine. *Id.*

The Complaint in the Action was brought against the following Defendants: Maruyasu Industries Co., Ltd.; Curtis-Maruyasu America, Inc.; Usui Kokusai Sangyo Kaisha, Ltd.; Usui International Corporation; Sanoh Industrial Co., Ltd.; Sanoh America, Inc.; and unnamed coconspirators, manufacturers and/or suppliers of Automotive Steel Tubes for engaging in a long-running conspiracy to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market and customers in the United States for Automotive Steel Tubes. Compl. at ¶ 1.

The Court appointed the undersigned firms as Interim Co-Lead Class Counsel and Interim Liaison Class Counsel for the End-Payor Plaintiffs' Actions in the Master Docket for MDL No. 2311. *See* Case Management Order No. 3, Master File No. 2:12-md-02311, Case No. 2:12-cv-00100 (Aug. 7, 2012), ECF No. 271. From the inception of these cases, Interim Co-Lead Class Counsel has represented the interests of the EPP classes, including overseeing and directing the prosecution and settlement of the claims brought against Sanoh. This proposed settlement is a result of those efforts.

EPPs allege that, in furtherance of the alleged conspiracy, Defendants agreed, during meetings and conversations, to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the supply of Automotive Steel Tubes, and then sold those products at supracompetitive prices to automobile manufacturers in the United States and elsewhere. Sanoh denies such allegations and has asserted defenses thereto.

The settlement between the EPPs and Sanoh is meaningful and substantial and will result in a payment of U.S. $8,360,000.00 for the benefit of the EPP Class. Standing alone, the monetary recovery from Sanoh is important, but if another settlement in the Action does not receive final approval or if EPPs name a new Defendant in the Action, the settlement is also valuable to the EPPs in that it requires Sanoh to provide comprehensive discovery cooperation in the form of, *inter alia*, attorney proffers, interviews with and depositions of witnesses, and the production of certain documents (including transactional data), related to the claims asserted in the Action. *See* Settlement Agreement at ¶¶ 33–46. The ability to obtain such assistance without protracted and expensive discovery is extremely valuable to the EPPs. Sanoh's cooperation agreement will greatly enhance the EPPs' ability to prosecute their claims against any Defendant with whom EPPs do not reach a finally approved settlement or against any new Defendant added to the Action. In addition,

Sanoh has agreed to refrain from conduct that constitutes a *per se* violation of Section 1 of the Sherman Act (whether characterized as price fixing, market allocation, bid rigging, or otherwise) with respect to the sale of Automotive Steel Tubes for a period of twenty-four (24) months from the date of entry of the Court's final judgment of the Settlement Agreement. Settlement Agreement at ¶ 27.

Additionally, Sanoh's sales will remain in the Action for purposes of computing the treble damages claim against any Defendant in the Action with whom EPPs do not reach a finally approved settlement or any new Defendant added to the Action in accordance with governing law and shall be part of any joint and several liability claims. Settlement Agreement at ¶ 53. The EPPs and the members of the proposed Settlement Class will retain their ability to recover from any future Defendant the entire amount of damages caused by the alleged conspiracy, even those attributable to Sanoh, less only the amount paid by Sanoh in settlement.

EPPs and their Interim Co-Lead Class Counsel believe, for all the reasons set forth herein, that the settlement with Sanoh is in the best interest of the proposed Settlement Class and merits the Court's preliminary approval. EPPs therefore request the entry of an Order:

1.   Preliminarily approving the settlement;

2.   Provisionally certifying the proposed Settlement Class;

3.   Staying the proceedings against Sanoh in accordance with the terms of the Settlement Agreement;

4.   Authorizing EPPs to provide notice of the Settlement Agreement to Settlement Class members at a later date, in a form to be approved in advance by this Court; and

5.   Appointing Interim Co-Lead Class Counsel for EPPs as Settlement Class Counsel for this settlement.

## THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT

The Settlement Agreement with Sanoh arises from extensive arm's length and good faith negotiations. EPPs' Interim Co-Lead Class Counsel engaged in informal discovery and a full-day mediation before entering into the settlement with Sanoh. Interim Co-Lead Class Counsel also participated in extensive negotiations that took place over several months through numerous telephone calls and other communications.

**Settlement Class**: The Settlement Agreement defines the Settlement Class as follows:

> All persons and entities that, from December 1, 2003, through the Execution Date, purchased or leased a Vehicle[2] in the United States not for resale, which included one or more Automotive Steel Tube(s) as a component part, or indirectly purchased one or more Automotive Steel Tube(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Automotive Steel Tubes directly or for resale.

Settlement Agreement at ¶ 12.

**Settlement Amount**: Sanoh has agreed to pay U.S. $8,360,000.00 by wiring such funds to an escrow account ("Escrow Account") established at Wells Fargo Bank within forty-five (45) days following the later of (i) entry of an order preliminarily approving this Agreement or (ii) the date Sanoh is provided with the account number, account name and wiring transfer information for the Escrow Account. *Id.* at ¶ 25.

---

[2] "Vehicles" are defined in the Settlement Agreement to refer to "new four-wheeled passenger automobiles, vans, sports utility vehicles, and crossover or pick-up trucks." *See* Settlement Agreement at ¶ 16.

**Cooperation**: Sanoh has agreed to provide extensive cooperation to the EPPs. A general summary of Sanoh's cooperation obligations is provided below. The terms of this cooperation are set forth in fuller detail in Section F (¶¶ 33–46) of the Settlement Agreement. Sanoh's obligation to cooperate includes, among many other things, the duty to provide the following:

- Identifying Vehicles. After conducting a reasonable search, Sanoh shall, to the best of its knowledge and within ninety (90) days of the Execution Date, identify those Vehicles sold in the United States from December 1, 2003 through the Execution Date of this Agreement that contain Automotive Steel Tubes sold by Sanoh. *Id.* at ¶ 34.

- Identity of Individuals. Within five (5) days of Settlement Class Counsel's request, Counsel for Sanoh shall provide Settlement Class Counsel with the identity of all current and former employees, directors and officers of Sanoh who: (1) were interviewed and/or prosecuted by any Government Entity in connection with alleged price-fixing, bid rigging and market allocation of Automotive Steel Tubes; (2) appeared before the grand jury in the DOJ's investigation into alleged antitrust violations with respect to Automotive Steel Tubes; and/or (3) were disclosed to the DOJ as having knowledge or information relating to the DOJ's investigation into alleged antitrust violations with respect to Automotive Steel Tubes. *Id.* at ¶ 38.

- Transactional Data. Within sixty (60) days of Settlement Class Counsel's request, Sanoh will use its best efforts to complete the production of transactional data concerning Sanoh's sales of Automotive Steel Tubes sold to Original Equipment Manufacturers, or other purchasers of Automotive Steel Tubes from December 1, 2001 through the Execution Date. In addition, Sanoh will provide, in response to a written request from Settlement Class Counsel, a single production of electronic transactional data generated during the two years after the Execution Date of this Agreement concerning Automotive Steel Tubes, as it exists in Sanoh's electronic databases at the time of the request, within sixty (60) days of the receipt of such request. Sanoh shall preserve such transactional data until two (2) years after the Execution Date of this Agreement. Sanoh will produce transactional data only from existing electronic transactional databases, except that, to the extent Sanoh has not recorded or maintained electronic transactional data for any period between December 1, 2001 and two (2) years from the Execution Date of this Agreement, then Sanoh will use reasonable efforts to produce existing hard copy records of sales transactions not recorded or maintained electronically in the existing electronic sales transactional database. *Id.* at ¶ 39.

- Documents. Within ninety (90) days of Settlement Class Counsel's request, Sanoh will use its best efforts to complete the production of the following Documents, including English translations, to the extent they exist: (1) Documents provided to or seized by Government Entities relating to their investigation into alleged competition violations with respect to Automotive Steel Tubes; (2) non-privileged Documents concerning Automotive Steel Tubes collected and reviewed in connection with a communication, meeting, or agreement regarding Automotive Steel Tubes, by any employee, officer or director of Sanoh with any

employee, officer, or director of another manufacturer or seller of Automotive Steel Tubes, but that were not provided to or seized by Government Entities; (3) Documents concerning Sanoh's determination of their prices for Automotive Steel Tubes; (4) Documents soliciting requests for quotation ("RFQ"), bids submitted in response to RFQs, RFQ award notifications, and post-award price adjustments for Automotive Steel Tubes, including any Annual Price Reduction (APR) Documents; and (5) Documents or non-public information regarding collusion with respect to any other automotive part that is the subject of the MDL Litigation. As to Documents in Sanoh's possession, custody, or control that are not listed above, Sanoh will consider in good faith any reasonable request by End-Payor Plaintiffs to collect and produce such Documents provided the request would not impose an undue burden on Sanoh. End-Payor Plaintiffs have acknowledged that Sanoh has already produced all documents provided to the DOJ in relation to its investigation into alleged competition violations with respect to Automotive Steel Tubes. *Id.* at ¶ 40.

- Attorney Proffers and Witness Interviews. Within thirty (30) days of Settlement Class Counsel's request, Sanoh shall use its best efforts to cooperate with Settlement Class Counsel as set forth in Sub-Paragraphs (a) to (c) below:

  (a) Sanoh's counsel will make themselves available by videoconference or at a mutually agreed location in the United States for up to three (3) meetings of one business day each to provide an attorneys' proffer of facts known to them, the first of which shall occur within thirty (30) business days of Settlement Class Counsel's request. Thereafter, Sanoh's counsel will make themselves available for reasonable follow-up conversations in connection with the attorney's proffers, and will use best efforts to respond to questions posed by Settlement Class Counsel.

  (b) Sanoh further agrees to make seven (7) persons available for interviews and depositions, provide seven (7) declarations or affidavits from the same persons, and make those persons available to testify at trial. The interviews and depositions shall be conducted by videoconference or in-person at End Payor Plaintiffs' sole discretion. The in-person interviews or depositions will be held at a mutually agreed-upon location in the United States, and each deposition shall be limited to a total of seven (7) hours over one (1) day unless the deposition is in a language other than English, in which case the deposition shall be limited to a total of thirteen (13) hours over two (2) days. If the interview, deposition, or trial takes place outside the country of the witness's residence, Settlement Class Counsel and settlement class counsel for Automobile Dealership Plaintiffs shall together reimburse half the reasonable travel costs incurred by such persons for time or services rendered. Such travel expenses may include economy airfare, meals, lodging and ground transportation, but not airfare for business or first class seats. Reimbursable expenses shall not exceed $1,500 per deponent or trial witness unless otherwise agreed upon by the parties. Sanoh will bear the cost of translation services for the witness interviews and depositions. The interview and the above-described deposition occur during the same trip, the above-limitations will apply to that trip. Nothing shall be construed provide that Sanoh has control over former employees.

(c) In addition to its Cooperation obligations set forth herein, Sanoh agrees to produce through affidavit(s), declaration(s) and/or at trial, in Settlement Class Counsel's discretion, representatives qualified to authenticate, establish as business records, or otherwise establish any other necessary foundation for admission into evidence of any Documents or transactional data produced or to be produced by Sanoh. Settlement Class Counsel agrees to use their best efforts to obtain stipulations that would avoid the need to call Sanoh witnesses at trial for the purpose of obtaining such evidentiary foundations.

*Id.* at ¶ 41.

**Injunction:** Sanoh has agreed for a period of twenty-four (24) months from the date of the Court's final judgment of the Settlement Agreement in the Action not to engage in conduct that constitutes a *per se* violation of Section 1 of the Sherman Act (whether characterized as price fixing, market allocation, bid rigging, or otherwise) with respect to the sale of Automotive Steel Tubes. *Id.* at ¶ 27.

**Released Claims**: The Settlement Agreement releases only (i) Sanoh; (ii) all of Sanoh's past and present direct and indirect, parents, subsidiary companies and affiliates, including their respective predecessors, successors and assigns; and (iii) each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the persons and each of the persons and entities listed in (i) and (ii). *Id.* at ¶ 10. "Releasees" does not include any defendant in the MDL Litigation other than Sanoh. *Id.*

The release does not include: (1) any claims made by direct purchasers of Automotive Steel Tubes; (2) any claims made by automotive dealerships that are indirect purchasers of Automotive Steel Tubes; (3) any claims made by any State (the state of California and the state of Florida will execute their own settlement agreements with Sanoh), State agency, or instrumentality or political subdivision of a State as to government purchases and/or penalties; (4) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or

delayed goods, product defect, securities or similar claim relating to Automotive Steel Tubes; (5) claims concerning any automotive part other than Automotive Steel Tubes; (6) claims under laws other than those of the United States (including laws of any Indirect Purchaser State) relating to purchases of Automotive Steel Tubes made by any Releasor outside of the United States; and (7) claims for damages under the state or local laws of any jurisdiction other than an Indirect Purchaser State. *Id.* at ¶ 23. Releasors shall not, after the date of the Settlement Agreement, seek to establish liability against any Releasee as to, in whole or in part, any of the Released Claims unless the Settlement Agreement is, for any reason, not finally approved or terminated. *Id.* The Settlement Agreement also provides that sales shall remain in the Action against any future Defendant, who remains jointly and severally liable for all damages caused by the conspiracy. *Id.* at ¶ 53.

## ARGUMENT

The Settlement Agreement is not only fair, reasonable, and adequate—resulting from extensive arm's length negotiations by experienced counsel—but also a thoughtfully conceived resolution of the proposed Settlement Class's claims that maximizes its recovery and guarantees cooperation by Sanoh in the continued prosecution of EPPs' claims.

## I.    The Court Should Grant Preliminary Approval Because the Proposed Settlement Falls Well Within the Range of Possible Approval.

It is well-established in the Sixth Circuit that there is an overriding public interest in settling and quieting litigation, particularly class actions. *See Griffin v. Flagstar Bancorp*, *Inc*., Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *6 (E.D. Mich. Dec. 12, 2013) (citing *UAW v. Gen*. *Motors*. *Corp*., 497 F.3d 615, 631 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions")); *see also IUE-CWA v. Gen*. *Motors Corp*., 238 F.R.D. 583, 593 (E.D. Mich. 2006). "This policy applies with equal force whether the settlement is partial, involving only some of the defendants, or complete." *In re Packaged Ice Antitrust Litig*., Case No. 08-MD-01952,

2011 U.S. Dist. LEXIS 17255, at *44 (E.D. Mich. Feb. 22, 2011) ("*Packaged Ice*"); *see also Agretti v. ANR Freight Sys.*, *Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) ("In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions.'") (quoting Manual For Complex Litigation (Second) § 30.46 (1986)). In fact, "settlement should be facilitated at as early a stage of the litigation as possible." 6A Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 1522, at 225-26 (2d ed. 1990) (citing 1983 Advisory Committee Notes); *see also* Manual For Complex Litigation (Fourth) § 13.12 (2004) ("*Manual*") ("[S]ettlement should be explored early in the case.").

Approval of a proposed class action settlement proceeds in two steps. First, the court grants preliminary approval to the settlement and provisionally certifies a settlement class. Second, after notice of the settlement is provided to the class and the court conducts a fairness hearing, the court may grant final approval of the settlement. *See Manual* § 21.63; *see also Bobbitt v. Acad. of Reporting*, Case No. 07-10742, 2009 U.S. Dist. LEXIS 62365, at *1 (E.D. Mich. Jul. 21, 2009) (citing authorities).

A proposed settlement agreement should be preliminarily approved if "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval." *Manual* § 30.41; *see also Int'l Union*, *UAW v. Ford Motor Co*., Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471, at *11 (E.D. Mich. July 13, 2006). The district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v Int'l Union of Allied Indus. Workers of Am.*, 803 F.2d 878, 880 (6th Cir. 1986).

Because courts "prefer settlement to litigation . . . a court will presume that a proposed class action settlement is fair when certain factors are present, particularly evidence that the settlement is the product of arms-length negotiation, untainted by collusion." 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 13.45 (5th ed. 2014) ("*Newberg*") (collecting cases); *cf. Rankin v. Rots*, Case No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006) ("[T]he only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.") (internal quotation marks omitted).

In considering whether to grant preliminary approval, the court is not required to make a final determination of the adequacy of the settlement or to delve extensively into the merits of the settlement. *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, Case No. 1:01-cv-9000, 2001 U.S. Dist. LEXIS 26714, at *17 (E.D. Ohio Oct. 19, 2001). These inquiries are reserved for the final approval stage of the class settlement approval process. Nor will any class member's substantive rights be prejudiced by preliminary approval because the court's "primary objective at that point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." Newberg § 13.10; *see also Sulzer Hip*, 2001 U.S. Dist. LEXIS 26714 at *17. Consequently, courts generally engage only in a limited inquiry to determine whether a proposed settlement falls within the range of possible approval and thus should be preliminarily approved. *Sulzer Hip*, 2001 U.S. Dist. LEXIS 26714, at *17–18 (preliminary approval may be based on "informal presentations" because of "substantial judicial processes that remain") (quoting Manual § 21.662 at 460 (2004)); *see also In re Packaged Ice Antitrust Litig.*, Case No. 08-md-01952, 2010 U.S. Dist. LEXIS 77645, at *35 (E.D. Mich. Aug. 2, 2010) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (inquiry limited to settlement's potential for final approval and propriety of class notice and fairness hearing). This

settlement is adequate and falls well within the range of possible approval given the extraordinary financial risk and significant investments needed to prosecute this inherently complex litigation.

## II.    The Court Should Grant Preliminary Approval Because the Proposed Settlement Satisfies the Requirements of Rule 23(e) and Sixth Circuit Precedent.

Effective December 2018, Rule 23(e) has been amended to codify the factors that affect whether a court should approve a class action settlement, including for a class that has not yet been certified.[3] Specifically, in the context of preliminary approval, the amendments direct interim class counsel to provide the court with information sufficient to enable the court to determine that the settlement is fair, reasonable and adequate; that certification for purposes of settlement is warranted; and that notice is justified because the court will likely grant final approval to the settlement.[4] These amendments largely mirror current practice under applicable law. As discussed in more detail below, courts in the Sixth Circuit have applied similar principles as part of its analysis of preliminary approval motions for many years. All such factors weigh in favor of preliminary approval here.

According to the amendments to Rule 23, before authorizing EPPs to disseminate notice of the Settlement Agreement to the Settlement Class, EPPs must demonstrate "that the Court will

---

[3] *See, e.g.*, Advisory Committee Notes at 28 ("The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate. Courts have generated lists of factors to shed light on this concern . . . . The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."); *see also Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *13−14 (N.D. Cal. Dec. 17, 2018) (quoting the Advisory Committee Notes to the 2018 amendments and stating that "the Court applies the framework set forth in Rule 23, while continuing to draw guidance from the [jurisdiction's] factors and relevant precedent").

[4] *See* John M. Barkett, "The 2018 Amendments to the Federal Class Action Rule," available at https://www.americanbar.org/content/dam/aba/administrative/litigation/materials/2017-2018/2018-sac/written-materials/miami-class-actions-amendments-to-the-federal-class.pdf.

likely be able to (i) approve the [Settlement Agreement] under Rule 23(e)(2); and (ii) certify the

class for purposes of judgment on the [Settlement Agreement]." Fed. R. Ci*v*. P. 23(e)(1)(B). Under

Rule 23(e)(2), a Court may only approve a settlement based on a finding that the proposed

settlement is "fair, reasonable and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately
> represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing
>> relief to the class, including the method of processing class-
>> member claims;
>> (iii) the terms of any proposed award of attorney's fees,
>> including timing of payment; and
>> (iv) any agreement required to be identified under Rule
>> 23(e)(3); and
> (D) the proposal treats class members equitably relative to each
> other.

Fed. R. Ci*v*. P. 23(e). These factors overlap with the factors that courts in the Sixth Circuit have

considered on preliminary and final approval, which include:

> (1) the likelihood of success on the merits weighed against the
> amount and form of relief in the settlement; (2) the complexity
> expense and likely duration of the litigation; (3) the opinions of class
> counsel and class representatives; (4) the amount of discovery
> engaged in by the parties; (5) the reaction of absent class members;
> (6) the risk of fraud or collusion; and (7) the public interest. The
> Court may choose to consider only those factors that are relevant to
> the settlement at hand and may weigh particular factors according
> to the demands of the case.

*Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *46–47 (quotation marks and citations omitted).

A court is not required at the preliminary approval stage to determine whether it will

ultimately approve the settlement, but only whether "the proposed settlement will *likely* earn final

approval." *See* Ad*v*. Comm. Note at 27 (emphasis added). As set forth in detail below, preliminary

consideration of the Rule 23(e) factors and the Sixth Circuit factors support preliminary approval

here.

**A.    The Class Representatives and Class Counsel Have Adequately Represented the Class (Rule 23(e)(2)(A)).**

The Sixth Circuit has articulated two criteria for determining adequacy of representation: "'1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Foundry Resins Antitrust Litig*., 242 F.R.D. 393, 407 (S.D. Ohio 2007) (quoting *Senter v. Gen. Motors Corp*., 532 F.2d 511, 525 (6th Cir. 1976)). EPPs submit that there are no conflicts between them and the proposed Settlement Class because EPPs and members of the proposed Settlement Class: (i) purchased or leased in the United States Vehicles containing Automotive Steel Tubes; and/or (ii) indirectly purchased Automotive Steel Tubes as a replacement part and have the same interest in establishing liability. *See In re Corrugated Container Antitrust Litig*., 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes") (internal quotation marks and citation omitted).

There can be no doubt that the Class Representatives and Interim Co-Lead Class Counsel have vigorously prosecuted the interests of the class. Here, EPPs are represented by counsel with extensive experience in antitrust and class action litigation. The Court appointed Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Interim Co-Lead Class Counsel in this Action and the other automotive parts antitrust cases, *see* Case No. 2:12-md-02311, ECF No. 271, and has repeatedly appointed them as Settlement Class Counsel as well. Across all related actions in this multidistrict litigation, Class Counsel have secured approximately $1.2 billion in settlements for the EPP class—a sum that, in the aggregate, is among the top three largest

antitrust indirect purchaser settlements in history. They have vigorously prosecuted the class claims, and they will continue to do so through all phases of the litigation, including trial. *See generally Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation").

> **B.** **The Settlement Agreement is the Result of Thorough Arm's-Length Negotiations (Rule 23(e)(2)(B)) and is Fair, Adequate and Reasonable in the Opinion of Highly Experienced Class Counsel (Sixth Circuit's Third Factor).**

This settlement is entitled to "an initial presumption of fairness" because it is the result of arm's-length negotiations among experienced counsel. Newberg § 13.45. The judgment of proposed Settlement Class Counsel that the settlement is in the best interest of the proposed Settlement Class "is entitled to significant weight, and supports the fairness of the class settlement." *Sheick v. Auto Component Carrier LCC*, Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at *51 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 597); *see also Cardizem*, 218 F.R.D. at 525. Courts give great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of a settlement.

"Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) (quoting *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990)). The Settlement Agreement here is the result of lengthy and hard-fought negotiations between counsel experienced in complex antitrust and consumer class action litigation. The settlement was negotiated for months and involved multiple discussions and a full-day mediation between Interim Co-Lead Class Counsel and counsel for Sanoh.

Interim Co-Lead Class Counsel were well-informed about the facts and the strengths and weaknesses of the claims asserted when it negotiated the terms of the Settlement Agreement. Interim Co-Lead Class Counsel undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation and consulted with experienced economists before negotiating the Settlement Agreement. Moreover, these negotiations were adversarial and conducted in the utmost good faith. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *Bowers v. Windstream Ky. East, LLC*, Case No. 3:09-cv-440-H, 2013 U.S. Dist. LEXIS 157242, at *5 (W.D. Ky. Nov. 1, 2013). There is nothing in the course of the negotiations or the substance of the settlement that discloses grounds to doubt its fairness – "[w]here a class settlement has been reached . . . after arm's length negotiation, conducted by capable counsel, it is presumptively fair." Manual § 21.662 at 464.[5]

**C.    The Proposed Settlement Provides The Best Possible Relief for the Class.**

      **i.    The Proposed Settlement Achieves an Excellent Result for the Class, Particularly Given the "Costs, Risks and Delay of Trial and Appeal" (Rule 23(e)(2)(C)(i) and Sixth Circuit's First and Second Factors), and Treats Class Members Equitably (Rule 23(e)(2)(D)).**

Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, Case No. 08-md-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) (quoting *Linerboard*, 292 F. Supp.2d at 639); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("*Cardizem*") ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex").

---

[5] Thus, there is no "risk of fraud or collusion," the sixth factor in the Sixth Circuit analysis.

Additionally, Sanoh would assert various defenses, and a jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, particularly with regard to damages, making the outcome of such trial uncertain for both parties. *See*, *e.g.*, *Cardizem*, 218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery" and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *53–54 (noting the "undeniable inherent risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracy as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages"). Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, given the stakes involved, an appeal is nearly certain to follow regardless of the outcome at trial. This creates additional risk, as judgments following trial may be overturned on appeal. *See, e.g.*, *Miller v. Farmers Ins. Exch.* (*In re Farmers Ins. Exch.*), 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class action judgment following trial reversed on appeal); *Robbins v. Koger Props.*, *Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed and judgment entered for defendant). Even if class members were willing to assume all of the litigation risks, the passage of time would introduce still more risk in terms of appeals and possible changes in the law that would, in light of the time value of money, make future recoveries less valuable. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce

the value of any recovery to the class."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Class than receiving the benefits of the proposed Settlement at this time"). Hence, "the certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem*, 218 F.R.D. at 525.

Against this background, a settlement providing the substantial benefits afforded here represents an excellent result for the members of the proposed Settlement Class. Sanoh's $8,360,000.00 payment provides for significant compensation to the proposed Settlement Class that will be available years earlier than would be the case if litigation against Sanoh continued through trial and appeal.

The Settlement Agreement also requires Sanoh to provide discovery cooperation to Interim Co-Lead Class Counsel by providing attorney proffers, interviews, depositions, and certain documents, among other cooperation. *See* Settlement Agreement § F (¶¶ 33–46). This cooperation is a class-wide benefit. *See*, *e.g.*, *Linerboard*, 292 F. Supp. 2d at 643; *In re Corrugated Container Antitrust Litig.*, MDL 310, 1981 U.S. Dist. LEXIS 9687, at *49 (S.D. Tex. June 4, 1981); *cf. In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment").

The Settlement Agreement also specifically provides that it does not alter any other Defendant's joint and several liability for the full damages caused by the alleged conspiracy, including all sales made by Sanoh. *See* Settlement Agreement at ¶ 53. In this regard, the Settlement

Agreement is similar to one of the settlements approved in *In re Corrugated Container Antitrust Litigation*, where the court noted the "valuable provision" under which plaintiffs reserved their right to recover full damages from the remaining defendant, less the actual amount of the initial settlement. *In re Corrugated Container Antitrust Litig.*, MDL No. 310, 1981 WL 2093, at *17; *see also In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1262 (7th Cir. 1980); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability). Here, too, EPPs will be able to pursue their full damages against any future Defendant, with no diminution other than deduction of the actual Sanoh settlement amount.

Finally, prior to the Court's holding a final approval hearing concerning this settlement, EPPs intend to submit for the Court's approval, a plan of allocation substantially identical to the plan the Court has approved on three previous occasions. *See, e.g.*, *In re Wire Harness Systems*, Case No. 2:12-cv-00103 (E.D. Mich.), ECF Nos. 537, 577, 628.

### ii. Class Counsel Proposes an Effective Method of Distributing Relief to the Class and Processing Class-Member Claims (Rule 23(e)(2)(C)(ii)).

Garden City Group ("GCG"), a premier provider of class action settlement administration services and the Court-appointed settlement administrator, has created an easy-to-use and intuitive settlement website (www.autopartsclass.com) for claim submission.[6] The website includes a drop-down menu that allows potential settlement class members to confirm whether they are eligible to recover as part of any of the *Auto Parts* settlements by inputting their Vehicle purchase information. The website provides answers to frequently asked questions, important deadlines, a list of defendants, and access to important documents, such as the long form notice and relevant Court filings. The website, which has been operational since October 12, 2015, is accessible 24

---

[6] In 2018, GCG was acquired by Epiq Global and is now known as Epiq.

hours a day, seven days a week and has received nearly 2 million visitors. *See*, *e.g*., Decl. of Brian A. Pinkerton at ¶¶ 18–19, Case No. 2:12-cv-00130, ECF No. 607. It also provides information that would allow potential class members to submit information via mail or toll-free telephone call. In short, "Class members need only submit a relatively simple claim form with basic questions about class membership." *Hale v. State Farm Mut. Auto. Ins. Co*., No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *19 (S.D. Ill. Dec. 13, 2018) (applying Rule 23(e)(2)(C)(ii) as amended and finding that the claim process weighs in favor of settlement approval). The procedure EPPs and GCG have worked together to create is "claimant-friendly, efficient, cost-effective, proportional and reasonable under the particular circumstances of this case." *Id.*

### iii.   The Settlement Does Not Propose An Award of Attorney's Fees At This Time (Rule 23(e)(2)(C)(iii)).

Interim Co-Lead Class Counsel are not seeking a proposed award of attorney's fees at this time but expect to move for an award of attorney's fees in the future. The Court has on three previous occasions approved Interim Co-Lead Class Counsel's requests for fee awards, on each occasion finding that "[t]he award requested is within the range of fee awards made by courts in this Circuit." *See*, *e.g*., Order re Mot. for an Award of Attorneys' Fees at ¶ 8, *In re Wire Harness Systems*, Case No. 2:12-cv-00103 (E.D. Mich. Nov. 7, 2018), ECF No. 626; Order re Mot. for an Award of Attorneys' Fees at ¶ 8, ECF No. 578 (E.D. Mich. July 10, 2017); Order Granting in part EPPs' Mot. for an Award of Attorneys' Fees, ECF No. 498 (E.D. Mich. June 20, 2016). Interim Co-Lead Counsel will seek an attorneys' fee award of no more than one third of the Sanoh settlement plus any reimbursement of expenses and costs and incentive awards awarded by the Court in connection with this settlement.

### iv.   EPPs Have Attached the Only Agreement in Connection With the Proposed Settlement (Rule 23(e)(2)(C)(iv)).

EPPs have attached the Settlement Agreement entered into between the parties as Exhibit

1. There are no additional agreements between the parties concerning the settlement for which EPPs seek approval.[7]

**III.   The Proposed Settlement Class Should Be Provisionally Certified Pursuant to Rule 23.**

The Manual notes the propriety of certifying a class solely for purposes of settlement, *see Manual* § 21.32, and courts in this Circuit routinely provisionally approve a proposed settlement class before deciding plaintiffs' motion for class certification. *See, e.g.*, *In re Delphi Corp. Sec. Derivatives & ERISA Litig*., 248 F.R.D. 483, 486 n. 2 (E.D. Mich. 2008) (granting final approval to both ERISA and Securities settlement classes, noting the court's earlier, preliminary approval of the settlement classes granted prior to a hearing on defendants' motions to dismiss); *Cardizem*, 218 F.R.D. at 516–17, 530 (granting final approval of proposed settlement, noting its earlier preliminary approval of both the proposed settlement class and the proposed settlement agreement granted prior to class certification and prior to hearing on motions to dismiss). A court may grant provisional certification where, as here, the proposed settlement class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *See In re Packaged Ice Antitrust Litig*., Case No. 08-md-01952, 2010 U.S. Dist. LEXIS 140235, at *27–28 (E.D. Mich. Sept. 2, 2010).

While in the context of a litigated class certification motion, a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), even in that context "the requisite 'rigorous analysis'

---

[7] The Sixth Circuit's Fourth Factor, "the amount of discovery engaged in by the parties," weighs in favor of the settlement because EPPs have benefited from significant, informal discovery in the Action, including, but not limited to, documents and proffers. This discovery has informed the settlement and counsel's opinion that it is fair, reasonable and adequate. The Sixth Circuit's Fifth Factor, "reaction of absent class members," is not yet relevant as the Court has not yet authorized notice of the proposed settlement. The Sixth Circuit's Seventh Factor, "the public interest," weighs in favor of approval for the reasons described above. *See supra*, § I.

of the record and consideration of the merits must be focused on and limited to the question whether the Rule's requirements have been established." *Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528 (E.D. Mich. 2013), *vacated*, Case No. 13-0113, 2014 U.S. App. LEXIS 4447 (6th Cir. Jan. 6, 2014), *reinstated in full*, Case No. 06-15601, 2014 U.S. Dist. LEXIS 29447 (E.D. Mich. Mar. 7, 2014) (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851–52 (6th Cir. 2013). Permissible inquiry into the merits of plaintiffs' claims at the class certification stage is limited:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the class certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013) (citing *Dukes*, 131 S. Ct. at 2552 n.6). "In other words, district courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Whirlpool*, 722 F.3d 838, 851–52 (internal quotation marks and citation omitted). Here, as demonstrated below, even under a "rigorous analysis," the requirements of Rule 23 are easily met.

### A.    The Proposed Settlement Class Meets the Requirements of Rule 23(a).

Horizontal price fixing class actions are routinely certified by courts in this District and elsewhere. EPPs' allegations of "a per se violation of the antitrust laws are exactly the kind of allegations which may be proven on a class-wide basis through common proof." *In re Southeastern Milk Antitrust Litig.*, Case No. 2:09-md-1000, 2010 U.S. Dist. LEXIS 94223, at *35 (E.D. Tenn. Sept. 7, 2010). "Courts have held that the existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present." *Id.* at *33 (internal quotation marks and citations omitted). "As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment." *Foundry*

*Resins*, 242 F.R.D. at 409; *see also Hyland v. Homeservices of Am.*, *Inc.*, Case No. 3:05-cv-612-R, 2008 U.S. Dist. LEXIS 90892, at *12 (W.D. Ky. Nov. 6, 2008).

> **i.     The Proposed Settlement Class Is So Numerous That It Is Impracticable To Bring All Class Members Before the Court.**

No magic number is required to satisfy the numerosity requirement of Rule 23(a)(1). *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006). A class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Foundry Resins*, 242 F.R.D. at 403 (citing *Bacon v. Honda of America Mfg.*, *Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)); *see also In re Am. Med. Sys.*, *Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

Here, the proposed Settlement Class consists of all persons and entities that from December 1, 2003 through the Execution Date of the Settlement Agreement between Sanoh and the EPPs, purchased or leased a new Vehicle in the United States not for resale which included one or more Automotive Steel Tubes as a component part or indirectly purchased one or more Automotive Steel Tubes as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. *See* Settlement Agreement at ¶ 12. Within this period, it is beyond dispute that millions of persons and entities throughout the United States have purchased or leased Vehicles containing Automotive Steel Tubes not for resale or indirectly purchased Automotive Steel Tubes as a replacement part. As a result of the large number of putative class members and their geographic distribution throughout the United States, joinder is highly impracticable if not impossible.

ii.     **End-Payor Plaintiff Class Representatives and the Proposed Settlement Class Share Common Legal and Factual Questions.**

Commonality only requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). While Rule 23(a)(2) speaks of questions of law or fact in the plural, "there need be only one common question to certify a class." *Whirlpool*, 722 F.3d at 853; *see also Cason-Merenda*, 296 F.R.D. at 536 (one common question of law or fact is sufficient); *Griffin*, 2013 U.S. Dist. LEXIS 173702, at *17 (E.D. Mich. Dec. 12, 2013) (same); *Date v. Sony Elecs.*, *Inc.*, Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095, at *10 (E.D. Mich. July 31, 2013) (same).

This prerequisite is readily satisfied here because "[a]ntitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D. Kan. 1995). Thus, in price-fixing cases, courts "have consistently held that the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist." *In re Dynamic Random Access Memory* (*DRAM*) *Antitrust Litig.*, Case No. 02-md-1486, 2006 U.S. Dist. LEXIS 39841, at *29 (N.D. Cal. June 5, 2006); *see also* Newberg § 3:10 at 278 (explaining that courts routinely define common questions of fact broadly, "such as 'did the defendants in fact collude in setting prices?'").

Here, EPPs have identified the following issues common to the proposed Settlement Class:

- Whether the Defendants engaged in a combination and conspiracy among themselves to fix, raise, maintain, or stabilize the prices of Automotive Steel Tubes sold in the United States;

- Whether the Defendants engaged in a combination and conspiracy among themselves to rig bids quoted to customers of Automotive Steel Tubes sold in the United States;

- Whether the Defendants engaged in a combination and conspiracy to allocate customers and the markets for Automotive Steel Tubes sold in the United States;

- The duration of the illegal conspiracy; and

- Whether Defendants' conduct resulted in unlawful overcharges on the prices of Automotive Steel Tubes.

Any one of these substantive issues would, standing alone, establish the requisite commonality under Rule 23(a)(2).

### iii. End-Payor Plaintiff Class Representatives' Claims Are Typical of the Claims of the Members of the Proposed Settlement Class.

Third, Rule 23(a) requires typicality of the class representatives' claims. *See* Fed. R. Civ. P. 23(a)(3). "The [typicality] requirement is not onerous," *Int'l Union*, *UAW v. Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *54, and courts liberally construe it. *See Foundry Resins*, 242 F.R.D. at 403. "In the antitrust context, typicality is established when the named plaintiffs and all class members allege[] the same antitrust violation by defendants." *Cason-Merenda*, 296 F.R.D. at 537 (quoting *Foundry Resins*, 242 F.R.D. at 405); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000); *In re Am. Med. Sys.*, 75 F.3d at 1082; *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40–41. "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 U.S. Dist. LEXIS 173702, at *17–18 (quotation marks and citation omitted); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40 (same).

Because the End-Payor Plaintiff Class Representatives and the members of the proposed Settlement Class believe they are all victims of the conspiracy to fix prices, rig bids, and allocate the market and customers for Automotive Steel Tubes, Rule 23(a)(3) is satisfied. *See Cason-Merenda*, 296 F.R.D. at 537 (finding typicality met where "the claims of the named Plaintiffs and those of the remaining members of the proposed class all arise from the same conspiracy and are based on the same theory of liability under the Sherman Act") (internal quotation marks and citation omitted)); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40–41 ("Because all Class

Members' claims arise from . . . a conspiracy to allocate markets in violation of the Sherman Act, their claims are based on the same legal theory and the typicality requirement . . . is met").

> ### iv. Proposed Settlement Class Counsel and End-Payor Plaintiff Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Class.

The Proposed Settlement satisfies the requirement of Rule 23(a) that the representative parties "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), for the same reasons described above. *See supra* § II.A. The Court appointed Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Interim Co-Lead Class Counsel in this Action and the other automotive parts antitrust cases, *see* Case No. 2:12-md-02311, ECF No. 271, and should appoint them as Settlement Class Counsel here as well. The End-Payor Plaintiff Class Representatives will fairly and adequately protect the interests of the proposed settlement class for the reasons stated above.

> ## B. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem Prods.*, *Inc. v. Windsor*, 521 U.S. 591, 615 (1997); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008). With respect to both requirements, the Court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (internal citations omitted).

> ### i. Common Questions of Law and Fact Predominate.

"Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *Whirlpool*, 722 F.3d at 859. Instead, "'[a]

claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position.'" *Foundry Resins*, 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001)). Common questions need only predominate; they need not be dispositive of the litigation. *Id.* (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)); *cf. In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535–36 (holding issues regarding the amount of damages do not destroy predominance). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Cason-Merenda*, 296 F.R.D. at 535–36 (quoting *Powers v. Hamilton Cnty. Public Defender Comm.*, 501 F.3d 595, 619 (6th Cir. 2007)). As pertinent to the EPPs' request here to provisionally certify the proposed Settlement Class under Rule 23(b)(3), the Supreme Court instructed that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 133 S. Ct. at 1191.

Because the EPPs allege conduct that injured the members of the proposed Settlement Class, issues common to the members of the proposed Settlement Class—for example, the existence and scope of the alleged price-fixing conspiracy among Defendants and the market impact of Defendants' conspiracy—predominate over any individual questions, and therefore class treatment of the claims is appropriate for purposes of this settlement. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."); *see also In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 254 (D.D.C. 2002) ("[A]s a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common

questions[.]") (quoting Newberg on Class Actions § 18.28 at 18–98 (3d ed. 1992)). This Circuit

has also held that "[p]redominance is a test readily met in certain cases alleging . . . violations of

the antitrust laws, because proof of the conspiracy is a common question that is thought to

predominate over the other issues of the case." *In re Scrap Metal Antitrust Litig*., 527 F.3d at 535

(quoting *Amchem*, 521 U.S. at 625).[8] Furthermore, here the evidence that will prove a violation as

to one Settlement Class Member is common to the others and will be sufficient to prove it as to

all—the anticompetitive conduct is not dependent on the separate conduct of the individual

members of the proposed Settlement Class. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at

*43.

This is true even if there are individual state law issues, as long as the common issues still

outweigh the individual ones; e.g., as long as a common theory can be alleged as to liability and

impact that can be pursued by the class. *See*, *e.g*., *Whirlpool*, 722 F.3d at 861 ("[I]t remains the

'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions

common to the class predominate over damages questions unique to class members" (internal

quotation marks and citation omitted)); *Scrap Metal*, 527 F.3d at 535 (where common issues

determine liability, fact that damages calculation may involve individualized issues does not defeat

predominance). Issues common to the proposed Settlement Class predominate in this case. These

---

[8] Other courts have recognized that the existence and scope of an alleged antitrust conspiracy are matters susceptible to class-wide proof, and thus tend to support a finding that common issues predominate over individual ones as to at least the first element of an antitrust conspiracy claim. *See*, *e.g*., *Cordes & Co. Financial Services*, *Inc. v. A.G. Edwards & Sons*, *Inc*., 502 F.3d 91, 105 (2d Cir. 2007); *Blades v. Monsanto Co*., 400 F.3d 562, 572 (8th Cir. 2005); *In re Blood Reagents Antitrust Litig*., 283 F.R.D. 222, 234 (E.D. Pa. 2012), *vacated* 783 F.3d 183 (3d Cir. 2015), *class certification granted* No. 09-2081, 2015 U.S. Dist. LEXIS 141909 (E.D. Pa. Oct. 19, 2015); *Reed v. Advocate Health Care*, 268 F.R.D. 573, 581 (N.D. Ill. 2009); *In re Urethane Antitrust Litig*., 251 F.R.D. 629, 634 (D. Kan. 2008); *Foundry Resins*, 242 F.R.D. at 408.

common issues of liability and impact predominate over any individual issues and strongly support

provisional certification of the proposed Settlement Class.

### ii. A Class Action is the Superior Method to Adjudicate These Claims.

Rule 23(b)(3) also requires that a class action be superior to other available methods of

fairly adjudicating the controversy. The superiority of class certification over other available

methods is measured by consideration of certain factors, including: the class members' interests

in controlling the prosecution of individual actions; the extent and nature of any litigation

concerning the controversy already begun by or against class members; the desirability of

concentrating the litigation of various claims in the particular forum; and the likely difficulties in

managing a class action. Rule 23(b)(3); *see Whirlpool*, 722 F.3d at 861.

Courts consistently hold that class actions are a superior method of resolving antitrust

claims like those alleged here. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219

F.R.D. 661, 678 (D. Kan. 2004) (noting that individual litigation of antitrust claims would be

"grossly inefficient, costly, and time consuming"). Here, the interests of the members of the

proposed Settlement Class in individually controlling the prosecution of separate claims are

outweighed by the efficiency of the class mechanism. *Cardizem*, 200 F.R.D. at 325–26 (finding

that class action is superior because it ensures fair and efficient adjudication). Untold numbers of

members of the proposed Settlement Class purchased or leased new Vehicles containing

Automotive Steel Tubes as a component part or indirectly purchased Automotive Steel Tubes as a

replacement part for a Vehicle during the settlement class period; resolving these claims in the

context of a class action would conserve both judicial and private resources and would hasten the

class members' recovery. *See*, *e.g.*, *Foundry Resins*, 242 F.R.D. at 411–12 ("Repeatedly litigating

the same issues in individual suits would produce duplicate efforts, unnecessarily increase

litigation costs, impose an unwarranted burden on this Court and other courts, and create a risk of inconsistent results").[9]

## IV.  <u>Notice to the Settlement Class Members.</u>

Because it would be most cost-effective and efficient to disseminate notice of this settlement together with notice of other settlements reached by EPPs in the MDL Litigation, the parties have agreed to defer dissemination of notice. As set forth in the Settlement Agreement, "End-Payor Plaintiffs, at a time to be decided in their sole discretion, shall submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Settlement Class Members identified by End-Payor Plaintiffs ('Notice Motion')." Settlement Agreement at ¶ 19. "The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice." *Id.* The Proposed Final Judgment Approving the Settlement Agreement Between End-Payor Plaintiffs and Sanoh and Entering Dismissal With Prejudice As to Sanoh is attached hereto as Exhibit 2. Accordingly, with the Court's permission, proposed Settlement Class Counsel will submit a motion for authorization to disseminate a Notice Motion at a later date.

## CONCLUSION

For the foregoing reasons, EPPs respectfully request that the motion for preliminary approval be granted and that the Court enter the accompanying Proposed Order:

1. Preliminarily approving the Settlement Agreement;

2. Provisionally certifying the proposed Settlement Class;

---

[9] Another criterion of Rule 23(b)(3) is manageability. The Supreme Court has made clear that manageability need not be considered where, as here, a class is being certified for settlement purposes. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial").

3.       Staying the proceedings against Sanoh (as defined in the Settlement Agreement) in accordance with the terms of the Settlement Agreement;

4.       Authorizing End-Payor Plaintiffs to provide notice of the Settlement Agreement to Settlement Class members at a later date, in a form to be approved in advance by this Court; and

5.       Appointing Interim Co-Lead Class Counsel for the EPPs as Settlement Class Counsel for this settlement.

Date: May 6, 2019               Respectfully submitted,

                           */s/ Elizabeth T. Castillo*
Adam J. Zapala
Elizabeth T. Castillo
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Hollis Salzman
William V. Reiss
David Rochelson
Noelle Feigenbaum
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
WReiss@RobinsKaplan.com
DRochelson@RobinsKaplan.com
NFeigenbaum@RobinsKaplan.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

Floyd G. Short
**SUSMAN GODFREY L.L.P.**
1201 3rd Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 373-7381
Facsimile: (206) 516-3883
fshort@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed
End-Payor Plaintiff Classes*

E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Counsel for the Proposed End-
Payor Plaintiff Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2019 I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Elizabeth T. Castillo*
Elizabeth T. Castillo
